(Decided 29th May, 1867.)

---

SAMUEL T. STALLINGS *vs.* JOHN RUBY'S Lessee.

*Equitable Estate—Effect of Patent—Land Office—Surrender—Notice of Title—Estoppel.*

T., being seized in fee of a tract of land called "Trouble," procured from the Land Office a special warrant to resurvey it, with leave to add any contiguous vacancy, and to reduce the whole into one entire tract. The resurvey was made and the surveyor returned his certificate to the Land Office, certifying that he had carefully surveyed the said tract, had added thereto a piece of contiguous vacancy, and reduced the whole into one entire tract, containing 133¼ acres, the same to be held by the name of "Ryefield." After the return of said certificate, T., by endorsement thereon, assigned all of his interest in the land mentioned therein to R., and desired a patent to be issued to him for the same, which was accordingly done. HELD:

That the assignment operated to give R. an equitable estate in all the land included in the certificate,—that the issuing of the patent must be assumed to have been done in accordance with well established rules

and regulations of the Land Office, and having been issued from a Court of competent jurisdiction, it is conclusive of all the facts stated in it, and cannot be reviewed collaterally—that by it R. was invested with a fee simple estate in all the land included in the certificate, on which the patent for "Ryefield" issued.

By the patent, R. obtained the original tract called "Trouble," the assignment by T. having operated as a surrender to the State of all his interest therein, and the State was thereby enabled to grant a fee simple title in the whole to R. by the name of "Ryefield."

The assignment and other proceedings in the Land Office constituted notice to all the world of the title;—it operated as an estoppel in *pais*, and by it T. was prevented from denying the right of R. to the land called "Trouble" as effectively as if he had executed a deed for it.

Estoppels only bind parties and privies, and not strangers.

APPEAL from the Circurt Court for Allegany County.

*Ejectment* by the appellee against the appellant for a tract of land called "Ryefield." The facts of the case are sufficiently stated in the opinion of the Court.

*Exception :* Upon the evidence the plaintiff offered two prayers, one of which the Court rejected, but granted the other, which is as follows :

If the jury shall find from the evidence in the cause that Thomas Ruby, on the 20th day of April, 1846, was seized of a good estate in fee simple, in and to the tract of land called "Trouble ; " that said Thomas then procured a warrant of resurvey to be issued out of the Land Office of the State of Maryland to the surveyor of Allegany county ; that said surveyor made the survey as therein directed, and returned the same to the Land Office, and that the copy now offered in evidence is a true copy of said return ; and also that said Thomas, after the return of said warrant, executed upon the back of said return an assignment to John Ruby, and that the copy of said assignment on the back of the copy of said return is a correct copy of said assignment, and that the patent for "Ryefield " now offered in evidence was issued in accordance with the directions of said assignment to John

Ruby, then the said patent for "Ryefield," vested in said John Ruby a good title to all the lands included within the lines of the said patent for "Ryefield" against said Thomas Ruby and all persons claiming under or through him by any claim of title acquired after the issuing of said patent for the tract called "Ryefield," and the plaintiff is entitled to recover.

To the ruling of the Court in granting the plaintiff's prayer, the defendant excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before BOWIE, C. J., BARTOL and CRAIN, J.

*Wm. Walsh* and *Thomas J. McKaig,* for the appellant.

The question in the case is, did the assignment by Thomas Ruby, endorsed on the certificate of resurvey, of all of his interest and estate in the land mentioned in said certificate to John Ruby, and the issuing of a patent to him for the same, give him a *legal title* to "Trouble," the original tract? It is admitted that John has a legal title by the patent for all of "Ryefield" that lies outside of the lines of "Trouble." But the State has no title to "Trouble," and could grant none to John Ruby. The State cannot grant what has previously passed from it. It cannot give a title which it has not. *Tolson's Lessee vs. Lanham,* 2 *H. & J.,* 174; *Hoye vs. Swan's Lessee,* 5 *Md. Rep.,* 237.

A grant of land to the *son and heir* is no surrender of the previous grant of the same land to the deceased father, and the son may claim it as heir by descent. *Tyler's Lessee vs. Carroll,* 1 *H. & McH.,* 78.

*B,* on a common warrant, included *part* of land that had been patented to *A,* and *B* got a patent for it. *A* died without heirs, and *C* got an escheat patent for *all* *A's* tract. *C* had title to the land, and *not B.* The grant

to *B* conveyed nothing in *A's* land, and did not even operate on it when it afterwards became escheat. *Opinion of Dulany*, 2 *H. & J.*, 261.

The possibility of escheat can't be granted. A grant must be of something in *esse* at the time. *Hall vs. Gittings' Lessee*, 2 *H. & J.*, 112; *Casey's Lessee vs. Inloes et al.*, 1 *Gill*, 430.

The assignee of a lease by the proprietary had a resurvey of a tract, including the *leased land*, and assigned his *plat and certificate to N*, who assigned to *O*, who obtained a patent for it. *This did not destroy the leasehold interest. Bradford vs. McComas*, 3 *H. & J.*, 444.

There is nothing in this case to destroy Thomas Ruby's legal title to "Trouble." How can the destruction of his legal title be worked out? He did not surrender it to the State. The assignment of the certificate does not profess to transfer anything to the *State*. Besides, a surrender can only be made of a less estate to one who had a greater. The State had no interest at all in "Trouble." It could not be the surrenderee. See 2 *Co. Lit.*, 551, *margin;* 2 *Lomax Digest*, 103, *&c.*

Neither did the assignment of the certificate convey the *legal title* to John Ruby, the assignee. The Acts of Assembly provide the mode of conveying the legal title to lands. Such a paper as this assignment cannot accomplish it. See *Acts* 1715, *ch.* 44, *sec.* 8; 1766, *ch.* 14, *sec.* 2; the substance of which is in the Code of Public General Laws, Article 24, section 1.

Eminent Domain has nothing to with this case, that is a right to take private property for public use on compensation to the owner, and is exercised only by the Legislature. This is not a case of that sort. *The Tidewater Canal Co. vs. Archer*, 9 *G. & J.*, 483; 2 *American Railroad Cases*, 503, 145, 86.

Admit that the Legislature could pass an Act to destroy Thomas Ruby's fee in "Trouble," and give it to John

Ruby, *on request*, can *the Land Office do it?* Clearly not. It is concluded then that Thomas Ruby never has been divested of the legal title to "Trouble." The assignment did not surrender it to the State, nor transfer it to John Ruby. The patent to John Ruby could only grant what the State had to give; *Cujus est, ejus est dare.* Then John Ruby has not the legal title to "Trouble," and the defendant should have a verdict for that part of "Ryefield" which "Trouble" covers, and the prayer of the plaintiff is not law, and should not have been granted.

*J. H. Gordon* and *Thomas Perry*, for the appellee.

The Court below granted the plaintiff's prayer, to which the defendant excepted, and the correctness of that ruling is now the only question to be decided by this Court.

The plaintiff had his patent for the whole tract issued to him on the 20th March, 1851, under the assignment dated 3d March, 1851. This certainly conveyed a good title as against Thomas Ruby. The patent to John Ruby was issued by order of the Chancellor, who was Judge of the Land Office, and who had full power to decree. 1 *Dorsey's Laws,* 254; *Act of* 1789, *ch.* 35, *sec.* 4; *Landholder's Ast.,* 307, 493, 494, 495, 310, 311, *sec.* 6; *Cook's Lessee vs. Carroll,* 6 *Md. Rep.,* 104; *Cunningham vs. Browning,* 1 *Bland.,* 304, 315.

The composition being paid, the State held the legal title in trust for the party entitled in equity, which was John Ruby, under the assignment. The certificate and assignment being returned to the Land Office by John Ruby, he stood before the Chancellor as the party having the equitable title, praying a conveyance by the State as trustee of the legal title, with the consent of the assignor, and the patent granted by order of the Chancellor is good. The assignment, and patent issued on it, operate as an estoppel of Thomas Ruby. 2 *Greenleaf's Cruise,* 611, top paging; *Sayles vs. Smith,* 12 *Wend.,* 57; *McClellan*

*and Wife vs. Kennedy et al.,* 8 *Md. Rep.,* 230; *Springstein vs. Schermerhorn,* 12 *John.,* 357 ; 2 *Thos. Coke,* 488, *top ;* 1 *Phil. on Ev.,* 465, *(note* 1 ;) *Hawkins vs. Hanson,* 1 *Har. & McHenry,* 523 ; 2 *Smith's Lead. Ca.,* 642.

The assignment and other procceedings in the Land Office, and patent granted on them, are notice to all parties who become interested subsequently, and therefore the subsequent grantors are estopped. *Lord Proprietary vs. Jennings and others,* 1 *Har. & McH.,* 92, 140–145 ; *Hoyes vs. Johnston,* 2 *Gill,* 291, 315–317 ; *Manahan and Gorman vs. Sammon and Thurston,* 3 *Md. Rep.,* 463 *and* 472 ; *Tongue's Lessee vs. Nutwell,* 17 *Md. Rep.,* 212 *and* 230.

For practice in the Land Office, see *Landholder's Assistant,* 72, 77, 285, 307, 474, 493, 494 *and* 495. The assignment by Thomas Ruby operates as a surrender to the State, which enabled it to grant the title to the whole to John Ruby. *Landholder's Ast.,* 81, 86, 87, 88, 89 *and* 152 ; 2 *Greenleaf's Cruise,* 412, 413, 414 ; *Commonwealth vs. Dudley,* 10 *Mass.,* 404 ; *Holbrook vs. Tirrell,* 9 *Pick.,* 105 ; *Maxwell's Lessee vs. Lloyd,* 1 *H. & McH.,* 212 ; *Hammond vs. Norris,* 2 *H. & J.,* 133.

CRAIN, J., delivered the opinion of this Court.

The record in this case presents for our consideration the correctness of a single instruction given by the Circuit Court at the instance of the plaintiff, the present appellee.

Thomas Ruby being seized in fee of a tract of land called "Trouble," lying and being in Allegany County, containing ninety-six acres, on the 20th of April, 1846, procured from the Land Office a special warrant to resurvey it, with leave to add any vacant land thereto contiguous, and to reduce the whole into one entire tract. In virtue of this warrant, Benjamin Brown, the surveyor of Allegany County, on the third day of June, 1846, returned his certificate to the Land Office, certifying that he had carefully surveyed for Thomas Ruby, the tract of

land called "Trouble," and found it to contain $96\frac{1}{8}$ acres, to which he had added one piece of contiguous vacancy containing $37\frac{3}{8}$ acres, and reduced the whole into one tract containing $133\frac{1}{2}$ acres, to be held by the name of "Ryefield." After this certificate was made, Thomas Ruby, under his hand and seal, on the 3d day of March, 1851, transferred, assigned and made over to John Ruby, the appellee, all his right, title, interest and estate in and to the land mentioned in said certificate, and desired a patent to be issued for the same.

This assignment operated to give John Ruby an equitable estate in all the real estate included in the certificate. This assignment on the certificate being returned to the Land Office by John Ruby, he stood before the Chancellor as the party having the equitable title, praying a conveyance by the State, as trustee of the legal title, with the consent of the assignor. As a patent was granted to him, we must assume that it was done in accordance with well established rules and regulations of the Land Office, of which Courts of justice will take notice; for, considering it as a Court of record, Chancellor Bland says, "it has, like all Courts of common law or equity of that description, the power to regulate its own practice and proceeding, which regulations become the law of the Court, and of the case also so far as they apply." 1 *Bland,* 315; 2 *H. & J.,* 151; *Landholder's Assistant,* 434, 442, 461. Having issued from a Court of competent jurisdiction, it is conclusive of all the facts stated in it, and cannot be reviewed collaterally. As soon as the patent issued, John Ruby, the grantee, was invested with a fee simple estate in all the estate mentioned in it. 1 *H. & McH.,* 93. Having thus obtained a fee simple in all the estate included in the certificate on which the patent issued, called "Ryefield," he obtained by the patent the original tract called "Trouble," the assignment of Thomas Ruby having operated as a surrender to the State of all his title

to "Trouble," which enabled the State to grant a fee simple title in the whole to John Ruby by the name of "Ryefield." *Landholder's Assistant*, 81, 86, 87, 88, 89; 152, 2 *Greenleaf's Cruise*, 411, 413, 414.

There is no pretence that any fraud was practised by John Ruby in obtaining the assignment of the certificate or procuring the patent to be issued to him. Had any fraud been practised, a Court of Equity would have been the appropriate forum where full and adequate relief could have been had. *Cook's Lessee vs. Carroll*, 6 *Md. Rep.*, 105, and the authorities there referred to. The law thus enunciated we desire to be understood as applying to Thomas Ruby and those claiming under him, subsequent to the assignment and the grant of the patent, being of opinion that the assignment and other proceedings in the Land Office constituted notice to all parties who became subsequently interested.

We are also of opinion, that by these proceedings Thomas Ruby was estopped from denying the right of John Ruby to the land called "Trouble," as effectively as if he had executed a deed for it. The assignment operated as an estoppel in *pais*, and as much importance and efficacy should be attached to it, as if it were a matter of record. He cannot be permitted to deny it, as the doctrine of estoppel in *pais* stands upon the broad ground of public policy and good faith, and is interposed to prevent injustice, and guard against fraud. Having acknowledged that the real estate was transferred for a valuable consideration, a Court of justice will not permit him to repudiate his admissions and attempt to defeat the title of the party who acted upon the faith of them, for in conscience and honest dealing he ought not to be permitted to do so. See *Alexander vs. Walter et al., Lessee*, 8 *Gill*, 247; *McClellan and Wife vs. Kennedy and others*, 8 *Md. Rep.*, 230; *McClellan vs. Kennedy*, 3 *Md. Chan. Dec.*, 234; *Smith's Leading Cases*, 642-'3. It is admitted that

estoppels only bind parties and privies and not strangers, and in this case we only design to apply the principle to Thomas Ruby and those claiming under him.

The appellant, by his defence, claims to defeat the appellee by relying on a lease from Thomas Ruby to him for "Trouble," dated 30th of March, 1861, and a deed from Thomas Ruby to James Ruby for "Trouble," dated 13th of June, 1861. Both of which were executed ten years after the patent for "Ryefield" was issued to the appellee, and in our opinion cannot be invoked for any such purpose. The appellant and James Ruby are as much estopped to deny the title of the appellee to "Ryefield," as Thomas Ruby, under whom they claim. The patent had been issued for more than ten years before the lease and deed were executed, on which the appellant relies, and was notice to him and the whole world that the title was in the appellee. We therefore concur with the Judge of the Circuit Court in his instruction to the jury, and affirm the judgment with costs.

<em>Judgment affirmed.</em>

(Decided 31st May, 1867.)