## WM. WILKINS GLENN vs. ALLEN BOWIE DAVIS, Trustee, and others.

*Estoppel—Extinguishment and abandonment of an Easement—Constructive Notice—Power of. Lessee to bind Reversioner—Construction of Deeds—Appeals—Construction of Article V, Section 23, of the Code of Public General Laws.*

Where G having been a party to a chancery suit for the partition of real estate, wherein was included a certain dominant tenement, afterwards became seized of the servient tenement, it was HELD:

That G was not estopped, as party to the chancery suit, from maintaining that, either by the true construction of the title deeds creating the easement, or by subsequent agreement of the parties in interest, the easement had been extinguished.

An agreement by a lessee for years to abandon an easement cannot bind the reversioner, unless he be a party to it, or it be made with his acquiescence.

Where a paper is not entitled by law to be recorded, placing it upon record does not operate as constructive notice.

A deed from W to B, made in 1823, conveying a lot on the principal street, in the City of Baltimore, contained a stipulation that notwithstanding a deviation of the existing partition wall from the true dividing line between the lot therein described, and the adjoining lot belonging to W, the said wall should remain undisturbed, " so long as the said houses shall endure." The houses then existing, were two-story brick dwellings. In 1870, many radical changes having meantime been made in the condition of the houses, and the house of the party claiming under B having become incapable of safe and beneficial occupation, he sought to build a new wall upon the true dividing line. Upon appeal from an order granting an injunction against the disturbance of the old wall, the true construction of the clause above quoted being disputed, it was HELD:

1st. That this provision must be taken most favorably for the grantee.

2d. That the evident design of this provision was, that whenever the grantee should find it necessary, either by reason of the decaying condition of his house, or its unfitness for the locality, to erect in its stead a

Glenn *vs.* Davis, Trustee, *et al.*

more substantial structure, suitable for the business purposes of that part of the city, his enjoyment of the property according to its true lines should no longer be restricted.

After an appeal has been taken from an order granting an injunction, it rests exclusively with the Appellate Court to determine the effect and operation of the order.

The effect of an appeal from an order granting an injunction, when an appeal bond has been filed and approved according to law, is to stay the operation of the order.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BRENT, ALVEY, and ROBINSON, J.

*Thos. W. Hall, Jr.,* and *S. Teackle Wallis,* for the appellant.

In no proper sense of the word, can both of said houses be said any longer to " endure."

It is upon the duration of *both* houses, not of *one,* or of either of them, that the right to remove the division wall is made to depend. *Gale on Easements,* 557.

If by " endure" be meant to " last" in the sense of preserving its identity, to be, as was argued in behalf of the appellees in the Court below—"*alter et idem,* just as any person is compared to himself many years before," in this sense neither of said houses can possibly be said to endure.   There is no parallelism between the preservation of the same identity in the case of an animal or vegetable through the several stages of growth and development, and the identity of a house, which, after the alteration and renovation of every part, remains the same only in respect of identity of location. There is no limit in time to the duration of a house, if its identity is not affected by the gradual and successive renewal and substitution of every part of it.   According to this argument the houses may endure forever.

14                           v. 35

If, however, by " endure" is intended to last, in the more limited and qualified sense of the rule laid down in *Dowling vs. Hennings,* 20 *Md.,* 179, viz.: " as capable of continued safe and beneficial occupation," neither in this sense can both of said houses be said to *endure.* By " beneficial occupation" is, of course, understood occupation which is beneficial, with reference to the value of the site occupied, and the revenue capable of being derived therefrom, if judiciously improved, as an investment, and not as a mere speculation.

There can be no pretence of *prescriptive* right in this case based on the continuance of said walls or any use or easement connected therewith, because the very stipulation relied upon in said ancient deeds, recognizes an existing deviation of said walls from the true dividing line, and reserves the right of adjusting the same at some future time, which time the appellant insists has now arrived.

The purchase of the term and the merger being the voluntary act of the reversioners, and due regard being had to the dignity and importance (according to the law of Maryland) of an estate for ninety-nine years, renewable forever, as distinguished from other and lesser terms, the reversioners and the appellees after them, are bound by the covenants and conditions of the agreement between the Chappells and Boehm, which amount to an express abrogation of the stipulations in the ancient deeds, and beneficially to all parties. The common law doctrine of merger will not be allowed in a Court of Chancery to work inequitably. 3 *Greenleaf's Cruise,* 581–583; 2 *Smith's Real and Personal Prop.,* 596, (or 1 *vol.,* 446, margin, *Lib. Ed.*;) 2 *Preston Shepp. T.,* 285, 286; 4 *Kent's Comm.,* 102; *Tulk vs. Moxhay,* 2 *Phill. Ch.,* 777.

There is nothing in the chancery proceedings for the partition of the estate of William Wilkins, to which this appellant was a party, and through which the appellees derive title, which can operate as a bar or estoppel *in pais* to the assertion by this appellant of his rights as an adjoining proprietor. He is not impugning or seeking to impugn the title

of the appellees, but only to enforce a proper construction of a stipulation in ancient deeds, which are the common source of title for both of them, and which stipulation for the reason already assigned, this appellant holds to be no longer operative. The case of *Stallings vs. Ruby's Lessee*, 27 *Md.*, and other cases referred to by the appellees' counsel on this head, are wholly inapplicable.

By reference to the descriptions in the original deeds and to the dates thereof, it will be seen that the deed from Waesche to Boehm (under whom appellant derives) is the elder deed, and that in the deed from Waesche to Sweetser, appellees' predecessor, the front line of the appellees' lot is made to run to the lot of the appellant as *a call*.

*Frederick W. Brune*, for the appellees.

The argument of the counsel for the appellees was mainly addressed to the facts of the case.

On the subject of partition walls, he referred to *Dowling vs. Hennings*, 20 *Md.*, 183–185, *and cases cited*; *Richards vs. Rose*, 9 *Exchequer*, 218; *Partridge vs. Gilbert*, 15 *N. Y.*, 601; *Eno vs. Del Vecchio*, 4 *Duer*, 53; *Sherred vs. Cisco*, 4 *Sandf. Sup.*, 480.

On the question of estoppel, he cited *Funk vs. Newcomer*, 10 *Md.*, 316; *Alexander vs. Walter*, 8 *Gill*, 251; *Stallings vs. Ruby's Lessee*, 27 *Md.*, 156.

As showing that the agreement on the part of the Chappells with Boehm did not bind the reversioners, he relied on *Washburn on Easem'ts*, 459; *Webster vs. Stevens*, 5 *Duer*, 553.

BARTOL, C. J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court of Baltimore city, passed upon bill, answer and proofs, confirming and continuing, with certain modifications, an injunction before issued; restraining and prohibiting the appellant from removing an alleged partition wall, between the premises owned by him, and those contiguous thereto owned by the

Glenn *vs.* Davis, Trustee, *et al.*

appellees, on the north side of Baltimore street, between Charles and St. Paul streets, in the city of Baltimore.

It appears from the record that in 1823, Frederick Waesche owned both parcels of ground; and by deed dated the 18th day of March, 1823, conveyed the *easternmost* lot to Charles G. Boehm, under whom the appellant claims; and by deed dated the 6th of January, 1825, conveyed the other or *westernmost* lot to Samuel Sweetser, under whom the appellees claim.

The deed from Waesche to Boehm contains the following provisions: "Reserving however to the said Frederick Waesche, his heirs and assigns, the use and benefit, in common with the said Charles G. Boehm, his heirs and assigns, of the alley, of the width of three feet or thereabout, and extending back about forty-five feet, as the same is now opened, between the house erected on the ground above described, and the house of said Frederick Waesche to the westward thereof, and adjoining thereto. It being the understanding and agreement of the said parties hereto of the first and third parts, that the present dividing and partition wall or walls between the said houses, shall, notwithstanding a deviation of the said wall or walls from the true dividing line between the ground above described, and the adjoining ground of the said Waesche, remain undisturbed, so long as the said houses shall endure." The subsequent deed from Waesche to Sweetser contained the same provision *mutatis mutandis*, with respect to the wall, and the use of the alley.

At the time of the deed to Boehm, there stood upon the lots two dwelling houses, separated to the height of the first story, by an alley about three feet wide, by which access was gained to the back yards of the two houses; and above that, by a wall nine inches thick. The second story of the westernmost house extending over the alley to this nine inch wall, which was the west wall of the easternmost house; being the dividing or partition wall referred to in the deeds.

We consider it very clearly established by the evidence of the surveyors, and the plats showing by actual measurement the location of the lots described in the deeds from Waesche to Boehm and to Sweetser, that the wall in question is wholly within the lines of the lot conveyed to Boehm, and stands upon the ground owned by the appellant. The deeds themselves recognize a probable deviation of the dividing wall from the true dividing line between the lots, and contemplate an adjustment of the same at some future time. This the appellant now claims the right to do; and was about to pull down his old house and remove the nine inch wall, for the purpose of building on his lot a large and substantial warehouse, of a style and character which he considers suitable to the place and commensurate with the present value of the property. This right is denied by the appellees, who insist that the old dividing wall which still forms the eastern wall of their house shall remain undisturbed.

One of the grounds relied on in their bill of complaint, is that their title being derived under certain proceedings in a Court of Chancery, for the partition of the estate of William Wilkins, to which the appellant was a party; he is thereby precluded and estopped from denying their title to the whole lot of ground with the improvements thereon as it had been held and occupied, extending to and including the use of the dividing wall in question. In our opinion there is nothing appearing in the chancery proceedings to support this position. The appellant is not seeking to impugn the title of the appellees to the property acquired by them under the partition; they took thereby the lot of ground which had been conveyed by Waesche to Sweetser, with the same right to have the east wall continued as an easement on the land of the adjoining proprietor, which Waesche retained under his deed to Boehm. The appellant, having acquired title to the lot conveyed to Boehm, is not estopped from maintaining, either that by subsequent agreement or acts of the parties interested, the easement has been extinguished or abandoned;

or that by the true construction of Waesche's deed it has ceased to exist. These were the conditions belonging to, and inherent in the title acquired by the appellees under the partition, and it is therefore no impeachment of their title, for the appellant to insist that these conditions shall be enforced. He is not setting up a title adverse to that acquired by the appellees under the partition; but on the contrary quite consistent with it, if his theory be correct. The cases of *Funk vs. Newcomer*, 10 *Md.*, 316; *Alexander vs. Walter*, 8 *Gill*, 251, and *Stallings vs. Ruby's Lessee*, 27 *Md.*, 156, cited by the appellees, have therefore no application to this case.

It is very clear that by the clause in the deed to which we have referred, the grantor Waesche, notwithstanding the lines of the property conveyed included the wall in question and a portion of the alley, reserved the right to the use of the alley in common, and the right to have the wall continued undisturbed, " *so long as the two houses should endure.* " These easements, created for the benefit of his own lot, passed to Sweetser under his deed in 1825. We agree with the Judge of the Circuit Court in the opinion, that the contract made on the 10th day of April, 1839, between Boehm and P. S. & J. G. Chappell, is not binding upon the appellees. The contract is inartificially drawn and somewhat obscure in its terms; but we think it is susceptible of easy construction, and if this were a case arising between the parties by whom it was made, we should have little difficulty in understanding and enforcing its provisions. But the appellees here do not claim title under the Chappells. At the time the contract was made, P. S. & J. G. Chappell held the westernmost lot as lessees for ninety-nine years, renewable, under a lease from Keener and wife, who in 1837 had conveyed the reversion in fee to Achsah Wilkins, Joseph Wilkins and John Glenn, executors of William Wilkins, deceased, under whom the appellees claim. It does not appear that these parties holding the reversion at the time the contract was made, were in any manner parties to it, or had

any notice of it, actual or constructive. As the paper was not entitled by law to be recorded, placing it upon record could not, of course, operate as constructive notice.*

We think the paper signed by Judge Glenn, one of the executors, dated April 20th, 1853, cannot affect the rights of the appellees. It does not, in terms, make any reference to the agreement of April 10th, 1839. Nor does it clearly appear to what partition wall it refers.

Then the question is presented, whether such an agreement made by a lessee, is binding upon those holding the reversion? And we think it is very clear, upon authority, that it is not. The effect of the agreement was to release and abandon the easements in the use of the alley and of the division wall, which were created by the original deed, and existed in the owners of the westernmost lot.

Such an agreement, made by a lessee for years, could operate only to the extent of his own interest and estate, and would not bind the reversioner unless he is a party to it, or it is made with his knowledge and acquiescence.

Without discussing this proposition further, we refer to *Daniel vs. North,* 11 *East.,* 372; 2 *Wm. Saunders,* 175; *Webster vs. Stevens,* 5 *Duer,* 553; *Gale on Easements,* 174, 180; *Washburn E. & S.,* 69, 111, 114, 459.

On the 21st day of June, 1851, the Chappells, by indenture, surrendered the residue of their term to the parties then holding the reversion; and thus the term was merged and

---

*The Reporter is direected to state, that the agreement of the 10th of April, 1839, as exhibited in the record, appeared to have been merely signed and sealed by the parties, without any certificate of acknowledgment thereof, as required by the statute, in order to entitle it to be placed on record; and the language of the Court as to the effect of recording, must be understood as applicable to such a paper. Since the decision was rendered, a complete copy of the paper has been produced, showing that in fact it had been regularly acknowledged, and in form entitling it to be recorded. But as the cause has been decided in favor of the appellant on other grounds, it becomes unnecessary to consider the effect of constructive notice arising from the recording of the agreement.

extinguished; and the whole estate in fee was afterwards acquired by the appellees, through certain chancery proceedings before referred to. It has been argued by the counsel for the appellant, that because the surrender of the term was by the voluntary act of the parties, the reversioners are bound by the agreement.

It is true that a lessee for years may create charges upon his estate which will not be defeated or destroyed by his alienation of his term, even though the term itself may thereby be extinguished. The cases on this subject are collected in *Smith on Real and Personal Prop.*, 446 m., referred to by appellant's counsel. In our judgment, neither the text of the author, nor the cases cited, support the appellant's position.

Here the agreement is not one simply creating a charge upon the term of years, or releasing a right of the tenant merely. Its effect, if it operates to bind the appellees, would be to change the rights and to limit and qualify the title of the reversion. We have found no authority to warrant us in giving to it this effect.

Nor do we find in the evidence any sufficient ground for saying that the easement, claimed in this suit, has been released or abandoned by the acts done under the agreement by the appellees, or those from whom they derive title, or by their acquiescence in it.

It appears that immediately after the execution of the contract between the Chappells and Boehm, the three foot alley was in fact closed, and that it has so remained ever since; and the fourteen inch wall, which was built in the centre of the alley to designate the new dividing line fixed by the parties, has also remained, and the first story of the house on the appellant's lot was extended to the fourteen inch wall, the west wall of the alley having been removed. This was the condition of the property when it passed into the possession of the reversioners, after the surrender of the lease in 1851; and so it has been held and possessed ever since.

Glenn *vs.* Davis, Trustee, *et al.*

To what extent do these facts amount to an abandonment of the easement?

Unquestionably, the law is well settled that an easement may be abandoned by the acts of a party indicating such an intention.

In *Reg. vs. Chorley*, 12 *Q. B.*, 575, (64 *E. C. L.*,) Lord DENMAN said : " We apprehend that an express release of the easement would destroy it at any moment, so the cesser of use, coupled with any act clearly indicative of an intention to abandon the right, would have the same effect without any reference to time."

And in the same case, it was held that the cesser of use, for a long space of time, would be a strong fact to show the intention to abandon the right.

On this question we refer also to *Moore vs. Rawson*, 3 *B. & C.*, 332, 338, (10*th ed. ;*) *Crossley, et al. vs. Lightowler*, (*L. R.*, 2 *Ch. App.*, 478.) Under these authorities we should have no difficulty in saying that the right to the use of the alley had been effectually extinguished and abandoned by the acts of the appellees, if that were the question here involved. But the evidence shows that after the agreement, the nine inch wall, which was the division wall mentioned in Waesche's deeds, remained as before, and continued to form the eastern wall of the appellees' house, down to the time of the filing of this bill.   So far, therefore, as the right to the use of this wall is concerned, there have been no acts on the part of the appellees, or any thing in the nature and extent of their possession and occupancy of the property, which shows any release or abandonment of their rights under the deed.   Having disposed of the other questions, it remains now only to determine the true construction, operation and effect of the provision in the deed from Waesche to Boehm before cited; for upon this must depend the right of the appellees to the relief prayed in their bill.

The question is whether, according to the evidence in the cause, the houses can be said to endure in the sense meant by the deed?

On this question we do not agree with the Judge of the Circuit Court. When we consider the state of things existing at the time of the deed, the character of the houses as described by the witnesses, and examine the testimony showing the many and extensive changes and alterations in them since made, both in their internal structure and their external form, it can hardly be said that they endure in any sense of the word, or preserve their identity. The division wall itself spoken of in the deed has been materially changed; it stands, it is true, in the same place, but it has been raised many feet higher, and what is more important still, the chimneys on the side of the appellees' have been taken away, thus materially impairing its strength, and making it insufficient and unsafe as a support to any new building on the lot of the appellant, such as is needed for the beneficial and profitable occupation of his property.

But it will be observed that the expression in the deed is not so long as *the division wall* shall endure, but "so long as the *houses (both of them) shall endure.*"

Applying to these words the limited and restricted construction to be found in the language of the Court in *Dowling vs. Hennings,* 20 *Md.,* 179, (which, however, we think is hardly applicable to the present case)—that is to say, conceding that these words mean " *so long as the two houses shall be capable of safe and beneficial occupation,*" we think the evidence abundantly shows that the house of the appellant had ceased to be in that condition, and consequently the time had arrived, which was in the contemplation of the parties to the deed, when the right to the easement should cease. In construing this provision of the deed, the rule of law requires that it shall be taken most favorably for the grantee. This rule is thus stated in *Gale on Easements,* 375 *m.:* "It may further be observed that as all easements are restrictions upon the natural right of property, in every case of conflict between the interest of the owners of the dominant and servient tenements, the liberty of the latter is more favorably re-

Glenn *vs.* Davis, Trustee, *et al.*

garded by the law than the attempts of the former to limit it." * * *

It must be borne in mind that the property in question is situated on the principal street in the business centre of a growing and prosperous city. It was well known to the parties when the deed was made, and evidently within their contemplation, that the old tenements, which then constituted the only improvements upon the property, would in the course of time become wholly unfit for the purposes for which alone the property could be beneficially and profitably occupied—that warehouses would take the place of the dwelling houses; and the evident design was that whenever the grantee, or those claiming under him, should find it necessary, either by reason of the decaying or dilapidated condition of his house, or its unfitness for the locality, to remove it and to erect in its stead a more substantial structure, suitable to the place and required for the business wants and purposes of that part of the city; that the restriction should no longer exist upon his enjoyment of the property conveyed by the deed, according to its true lines as therein described. This, we think, is the true construction of the provision in the deed. It was not intended that the right to improve the property should be denied to the grantee until the houses, or one of them, should cease by the dilapidation of time, or actually tumble down.

The testimony shows clearly that the house of the appellant is no longer fit for safe and beneficial occupation; then he has the right to erect another, of such character as in his judgment is suitable to the place and as his interests require. It is proved that the old nine inch wall, in its present condition, is wholly insufficient to support such a building.

Under these circumstances, according to our interpretation of the terms of the deed, he has the right to remove the old division wall, and to erect a new building upon his lot, using all proper care and diligence to avoid injury to the property of the adjoining proprietors.

We think the order of the Circuit Court continuing the injunction was erroneous, and will sign a decree reversing that order and dismissing the bill.

With respect to the matters contained in the supplemental record, it is sufficient to say that there was no error in passing the order of the 17th of December, 1870. After the appeal had been taken, it rested exclusively with the Appellate Court to determine its effect and operation.

In the case of *Blondheim vs. Moore,* 11 *Md.,* 365, this Court decided that under the Act of 1835 and its supplements, the effect of an appeal from an order granting an injunction, when an appeal bond has been filed and approved according to law, is to stay the operation of the order.

The provisions in the Code, Article 5, section 23, are substantially the same as the pre-existing statutes, and must have the same construction.

*Order reversed and*
*bill dismissed.*