(Decided 18th December, 1872.)

---

CHARLES C. BROWNE *vs.* THE TRUSTEES OF THE METHODIST EPISCOPAL CHURCH IN THE CITY AND PRECINCTS OF BALTIMORE.

*Right of Way—Presumption of a Grant, how repelled—How a Right of Way may be Extinguished—Presumption of a Release of the Right of Way—Evidence of a Presumptive Grant or Presumptive Release to be submitted to the Jury—Adverse Possession to confer a Right of Way, &c.—Construction of a Devise—Evidence—Estoppel.*

The use and enjoyment of a road for twenty years adversely, and without qualification, affords sufficient ground for the presumption of a grant; but if the enjoyment can be referred to the license of the party over whose lands the right of way is claimed, or can be placed upon any other footing, than a claim or assertion of right, it will repel the presumption of a grant.

Browne *vs.* Trustees M. E. Church of Balt. City.

If the right to a road be acquired by adverse user for twenty years, its non-user for a like space of time, with the knowledge and acquiescence of the owner of the inheritance, will extinguish the right so acquired; because such cesser to use the road affords legitimate presumption of a release of the right.

Whilst a grant of the right of way may be presumed from its long use and enjoyment, the release of such acquired right may be inferred from its continued abandonment, or forbearance to use it. The presumptive grant, and the presumptive release, rest on the like basis, and the evidence to support either is not conclusive; but is a matter to be submitted to the jury, from which they may infer a grant or release as the case may be.

The adverse possession capable of conferring a right of way, or of supporting the presumption of a release, or abandonment, must be against the owner able in law to assert his rights, and to resist the adverse claim; and hence any non-user of the easement, while the land is in possession, occupation or control of the tenant for life, does not affect the owner of the inheritance, unless such non-user was by his acquiescence, knowledge or authority.

A dwelling-house with certain land and appurtenances was devised to C. and his heirs, in trust, to permit S. to take and receive the profits during her natural life, or to reside thereon if she should think proper; but if she should not reside thereon, the same was to remain in the hands of C., he paying over to S. the annual rents and profits thereof during her natural life; and at her death the said dwelling, with the appurtenances, was devised to the heirs of the body of S., lawfully begotten; and failing such heirs, to E. and her heirs forever. S. died intestate and without issue. HELD:

That S. had only the beneficial use of the property devised to her, during her natural life.

In certain conveyances of real estate, sold by an executor pursuant to the direction of his testatrix, reference was made to a plat of the property, as having been exhibited at the time of sale. On this plat a road was laid down. In an action, for obstructing the right of way over this road, against persons claiming title under the deeds of the executor, the plaintiff to maintain his claim to the easement, tendered in evidence a plat, coupled with an offer to prove that it was the identical plat referred to in the several deeds as having been exhibited at the sale of the property. HELD:

That this evidence was admissible.

Where one stands by and sees another laying out money upon property to which he has some claim or title, and does not give notice of it, he cannot afterward, in good conscience set up such claim or title, except where the

110 MARYLAND REPORTS.

Browne *vs.* Trustees M. E. Church of Balt. City.

encroachment is on land, the title to which is equally well known or equally open to the notice of both parties. Where the claim is under some trust, lien or other right, not equally open and apparent to the parties, the principle applies in favor of one who would be deceived by such want of notice. In such case the doctrine of *estoppel in pais*, affords a protection to the party misled by the conduct of the other party.

APPEAL from the Circuit Court for Baltimore. County.

This was an action brought on the 2nd December, 1871, by the appellant against the appellees to recover damages for the obstruction of an alleged right of way. At the trial below, the plaintiff offered in evidence the Act of 1849, ch. 323, a supplement to an Act authorizing the defendants to hold certain lands as a burial ground; a notice to the defendants to remove the obstructions to the road; the record of the case of *Bujac vs. Browne, et al.*, in the Circuit Court for Baltimore County, in Equity, as also the record of the case of *Bousquet, et al., vs. Guestier, et al.*, in the Superior Court of Baltimore City, in Equity, the various deeds under which the parties claimed, and a copy of the will of Elizabeth Lawson. By this will admitted to probate in February, 1814, the testatrix directed her executor, Charles C. Browne, the father of the plaintiff, to lay off ten acres of land, adjoining her dwelling house in Baltimore County, called "Font Hill," which she devised as follows: "I do hereby devise and bequeath the said dwelling house called 'Font Hill,' with the land and appurtenances before mentioned, to be laid out as directed, unto Charles C. Browne, and his heirs, in trust, to permit Sarah Browne to take and receive the profits during her natural life, or to reside thereon if she shall think proper; but if she shall not reside thereon, it is my will and desire, that the same shall remain in the hands of the said Charles C. Browne, he paying over to her the annual rents and profits thereof, during her natural life, and at the death of the said Sarah Browne, I give, devise and

bequeath the said dwelling, with the appurtenances, unto the heirs of her body lawfully begotten, and failing such heirs, unto Elizabeth Browne, daughter of the said Charles C. Browne, and to her heirs forever."

The residue of her real estate, the testatrix directed her executor to sell and "to convey the same to purchasers absolutely and in fee simple."

Elizabeth Browne mentioned in the will died about 1826 or 1827, intestate, unmarried, and without issue. Sarah Brown died in 1855, intestate, unmarried, and without issue. The plaintiff became the owner in fee of "Font Hill," and the ten acres adjoining, under proceedings in the case of *Bujac vs. Browne, et al.*

The plaintiff offered in evidence a plat of Font Hill, signed Cornelius Howard, 1st May, 1815, and introduced evidence tending to show that it was the identical plat referred to in the several deeds, as having been exhibited at the sale of the property of Mrs. Lawson, by her executor. A witness for the plaintiff testified on cross-examination, that the road leading through the property claimed by the appellees, being Mount Olivet Cemetery, was closed by a Mr. Patterson, when he bought the property in 1829. Other evidence in relation to this road will be found in the opinion of this Court.

A witness in behalf of the defendants testified that he was one of the trustees and also one of the committee to take charge of Mount Olivet Cemetery, and that he never heard of a claim of a right of way through the property, by the plaintiff prior to this suit.

*Plaintiff's Exception:* The plaintiff asked the following instruction :

If from the evidence the jury find that Elizabeth Lawson was seized of the land embraced in the plat offered in evidence by the plaintiff, that she died leaving the will offered in evidence by the plaintiff, that Charles C. Browne, her executor, sold and conveyed the several

parts of said land of said Elizabeth Lawson to Guestier, known on said plat as "Nos. 1 and 2, 3 and 8," by the deeds offered in evidence, and that the defendants hold the said tracts so sold to Guestier, by the mesne conveyances offered in evidence. If they further find that said plot so offered in evidence, is the plot referred to in said deeds offered in evidence. If they further find that the said Sarah Browne, named in said will of Elizabeth Lawson, died in 1855; that Elizabeth Browne, named in said will, had previously died intestate, unmarried and without issue, and that her heirs-at-law were Charles C. Browne, the plaintiff, Mary E. Browne, Ellen E. Wilson, wife of Dr. Thos. Wilson, and Charles J. B. Mitchell, and that said C. C. Browne, the said executor, died intestate, leaving as his heirs-at-law, said C. C. Browne, Ellen E. Wilson, and his widow, Martha T. Browne; that said widow died also before the bringing of this suit; that Robert Browne, named in said will, died intestate in 1856, leaving James T. Browne, his sole heir-at-law. If they further find that said heirs-at-law of Elizabeth Browne, said heirs-at-law of said C. C. Browne, the elder, and said heirs-at-law of Robert Browne, were parties defendants to the action of *Bujac vs. Browne, et als.*, in the Circuit Court of Baltimore County, in Equity, the record of which was read in evidence, and that said C. C. Browne, the plaintiff, under the decree in said cause, acquired all the right, title and interest of all the parties to this cause. If they moreover find that the road marked on said plat between lots 3 and 8, and east of lot No. 1, is the road in controversy in this suit, and was actually in existence at and subsequent to the time of said conveyances from Browne, executor, to Guestier, and was used as a road connecting Font Hill with the Frederick Turnpike Road, as testified before them, and that the defendants caused to be erected a fence which prevents the use of said road, as testified before

them, then they must find for the plaintiff, although they should further find that said road has not been actually used by the occupants of Font Hill since it was obstructed by Patterson in the manner testified before them, if they find such obstruction to have been so made, nor although the defendants themselves, prior to the late erection of said fences, had obstructed said way by planting trees or burying the dead.

The Court (YELLOTT and WATTERS, J.) refused to give the instruction and granted the following prayer of the defendants:

2. If the jury shall find that the defendants, and those under whom they claim had, prior to the bringing of this suit, enjoyed adverse possession of the bed of the road in question for more than twenty years, then the plaintiff is estopped from setting up any claim to the re-opening of said road, and is not entitled to recover in this action, although they shall further find that the said road existed at the time of the sales of Font Hill by Charles C. Browne, executor of Elizabeth Lawson, as delineated on the plat of Font Hill, offered in evidence, and that the said plat is the identical one mentioned in the deeds from said executor to Peter A. Guestier, offered in evidence, and that the plaintiff, and those under whom he claims, were entitled to the use of said road before its closing.

To this ruling of the Court the plaintiff excepted.

*Defendant's first exception:* The plaintiff offered a plat of Font Hill, signed Cornelius Howard, May 1st, 1815, coupled with an offer to prove that it was the identical plat referred to in the several deeds put in evidence, as having been exhibited at the sale of the property of Elizabeth Lawson by Charles C. Browne, executor. The defendants objected, but the Court overruled the objection and the defendants excepted.

8                     v. 37.

*Defendants' second exception:* The defendants offered the following prayers beside the one which the Court granted:

1. If the jury shall find that the defendants purchased the property known as "Mount Olivet Cemetery," from Lancaster Ould and wife, in the year 1849, and proceeded at once to dedicate the same for burial purposes, and have ever since continued to use the said property for that purpose; and shall further find that the road in question would, if re-opened, pass over and through the graves actually occupied by the bodies of the dead, then, for considerations of public policy, the said road should not be re-opened, and the plaintiff is not entitled to recover in this action, although they should further find that the plaintiff, and those under whom he claims, were entitled to the use of said road before its closing.

3. If the jury shall find that the plaintiff's lands were held in trust for Sarah Browne during her lifetime, with remainder over to the plaintiff and others, then it was the duty of the trustees holding the legal title of said property, to prevent the closing of the road in question, and from his failure to do so for more than twenty years, it may well be presumed that he has been prevented from objecting in consequence of the use of said road-bed by the defendants being rightful.

4. If the jury shall find that the defendants have been the owners' of the property known as "Mount Olivet Cemetery" since the year 1849, and have been since that time engaged in improving, and expending money thereon to fit it for burial purposes, with the full knowledge of the plaintiff, and without any intimation from him of a claim to a road through the property, then the plaintiff is not entitled to recover in this action.

These prayers the Court rejected, and the defendants excepted. The verdict and judgment being for the defendants, the plaintiff appealed.

Browne *vs.* Trustees M. E. Church of Balt. City.

The cause was argued before STEWART, BRENT, MILLER and ALVEY, J.

*Michael A. Mullin* and *Wm. Shepard Bryan,* for the appellant.

Both parties claim title under the will of Elizabeth Lawson; the appellant to the dwelling house "Font Hill," and the ten acres adjoining directed to be laid off by the executor; and the appellees to portions of the estate directed by the testatrix to be sold. The executor in pursuance of the powers vested in him laid off the estate according to the original plat offered in evidence and exhibited in the Appellate Court. The Mansion house and the ten acres adjoining were there shown, as well as the several lots sold to Guestier, under whom the appellees claim.

This plat made and exhibited under these circumstances, would be binding on both parties, even were it not referred to in the deeds under which the defendants claim. *Wakeman vs. West,* 7 *Carr & P.*, 479; *Doe d. Hughes vs. Lakin,* 7 *C. & P.*, 481; *Bridgman vs. Jennings,* 1 *Ld. Raym.*, 734; *Carroll vs. Smith,* 4 *H. & J.*, 128; *Howard vs. Moale,* 2 *H. & J.*, 268.

But the plat being referred to in the deeds from Browne, Ex'r of Dawson, to Guestier, (under whom the defendants claim) is to be considered a part of the description contained in them, and the defendants cannot deny anything shown by it. 1 *Phillips on Evidence,* 282, (*Edit.* 1859;) *Wakeman vs. West,* 7 *Carr & P.*, 479; *Smiles vs. Hastings,* 24 *Barbour,* 49; *Carroll vs. Smith,* 4 *H. & J.*, 131.

There is no evidence of any grant or other positive act by which the road was closed, but the appellees and the Court below have rested the entire cause upon an alleged adverse posssssion on the part of the appellees and those under whom they claim.

The defendants' second prayer which was granted by the Court below, assumes that adverse possession for twenty years is a complete bar to the plaintiff's action; that is, that after such possession the plaintiff "is estopped from setting up any claim." This ignores the distinction between the law of presumption upon which prescriptive titles are founded, and which existed prior to the Statute .21 James I, ch. 16, and the limitations. established by that statute.

Adverse possession for more than twenty years will not bar a right of way. It might under proper circumstances authorize the question to be left to the jury whether there was a release of the right of way. The defendants were not willing· that from their possession the jury should be permitted to presume a release. *Wright vs. Freeman,* 5 *Har. & John.,* 467.

A release by the owner of the fee cannot be presumed from the acquiescence of the tenant. for life, or her tenants, or even from their positive acts. 2 *Greenleaf's Evidence,* sec. 545, *note* 6; *Yard vs. Ford,* 2 *Wms' Saunders,* 175d., *Wood vs. Veal,* 5 *Barn. & Ald.,* 454; *Glenn vs. Davis,* 35 *Md.,* 215.

Sarah Browne was only a tenant for life of an equitable estate, with an unexecuted legal estate in remainder to the devisees mentioned in Mrs. Lawson's Will. *Ware vs. Richardson,* 3 *Md.,* 535, 541; *Tongue's Lessee vs. Nutwell,* 13 *Md.,* 415.

The plaintiff's title vested in 1855, and he brought suit in 1871. The acts or laches of Sarah Browne, could not affect the plaintiff, as he did not claim under her, .she being tenant for life and he having purchased the titles of the parties in remainder.

*Frederick T. Baker* and *John M. Carter,* for the appellees.

The evidence offered for the purpose of identifying the plat given in evidence by the plaintiff, was insufficient.

But had the plat been properly identified as the one exhibited at the sale of Mrs. Lawson's property, it should not have been permitted to go to the jury ; as there were no courses and distances on it to enable the Court and jury to determine that the lots there laid down were the same lots described in the various deeds from Chas. C. Browne, executor. *Clary vs. Kimmell*, 18 *Md.*, 246 ; *Budd vs. Brooke, et al.*, 3 *Gill*, 227.

But even were it conceded that the road in question was *rightfully* used by those under whom the plaintiff claims, the evidence in the cause fully justifies the presumption of a release in favor of the defendants, and those under whom they claim.

The clause in the will of Elizabeth Lawson which contains the devise of Font Hill, vests in Sarah Browne an estate in fee—the use having been executed by the Statute in her, and the rule in Shelly's case applying directly to the words of the devise. *Broughton vs. Langley*, 2 *Ld. Raym.*, 873 ; *Horne, et al., vs. Lyeth*, 4 *H. & J.*, 431 ; *Halton vs. Weems*, 12 *G. & J.*, 83.

In cases of trusts other than for the sole and separate use of married women, or where certain active duties are imposed upon the trustee, the use is executed in the *cestui que trust*. In this case the *cestui que trust* was a *féme sole*, and it would seem that no active functions devolved upon or were exercised by the trustee. *Broughton vs. Langley*, 2 *Ld. Raym.*, 873 ; *Ware, et al., vs. Richardson*, 3 *Md.*, 505 ; *Williams vs. Waters*, 14 *Mees. & Wel.*, 136.

But even were this an active trust, a title by prescription might be acquired as well against the trustee as the *cestui que trust*. *Melling vs. Leak*, 16 *C. B.*, 652. (81 *Eng. C. L.*) The plaintiff's prayer was properly rejected. It contained propositions of law to be submitted to the jury to be ascertained as facts. It was complicated and multifarious. It was founded upon an hypothesis of fact which took from the jury the finding of other

facts by which the right to recover might have been impaired or defeated. *Handy & Tall vs. Johnson,* 5 *Md.,* 450; *Cumb. Coal & Iron Co. vs. Scally,* 27 *Md.,* 589; *Crawfurd's Admr. vs. Beall's Ex'r.* 21 *Md.,* 237; *Adams vs. Capron, et al.,* 21 *Md.,* 205.

The defendants' first and fourth prayers were improperly rejected. *Tongue's Lessee vs. Nutwell,.* 17 *Md.,* 212; *Act of* 1849, *ch.* 323; *Act of* 1852, *ch.* 278.

STEWART, J., delivered the opinion of the Court.

The appellant sued for obstruction to a right of way, alleged to belong to him, through the property of the appellees.

There is no dispute about the property respectively claimed by the parties, but the alleged right of way, has given rise to the contest. In the trial of the cause, the appellant excepted to the refusal of his prayer, and the allowance of the appellees' second prayer.

We think the appellant's prayer was objectionable, upon several grounds. In blending propositions of law and fact, and proposing to submit mere assumption of both to the jury.

When the plat was offered by the appellant to be followed by evidence, that it was the same exhibited at the sale of Mrs. Lawson's property, objection was made by the appellees' which was overruled by the Court; (properly we think); but no question was afterwards raised as to the sufficiency of the testimony, in regard to it, submitted to the jury, to enable them to determine if it was the same plat used at the sale aforesaid.

If the objection had been made after all the evidence, in regard to it, we think it was properly left to the jury for the purpose proposed.

But the prayer ought not to have assumed, as a fact that there was a road marked out on the plat, and the same road connecting Font Hill with the turnpike, and that it was so used. The plat had no description of the

Browne *vs.* Trustees M. E. Church of Balt. City.

courses of the lots marked out, or of any road—nor do the deeds offered in evidence which refer to a plat exhibited at the sale, describe any road thereon running through the property, and it was for the jury, if they could, to determine the truth of these matters.

The prayer also assumed, that the mere use of the road, without reference to the extent and duration of its *user* and enjoyment, conferred the right on the appellant, as the holder of the inheritance, to use it, with the right to recover for its obstruction.

The proof as to the *user* of the road, was indefinite, that sometimes it was used—at other times closed; but the prayer assumes, if the road was used at all, the right of permanent enjoyment ensued. There is no doubt the use and enjoyment of the road for twenty years adversely, and without qualification, would afford sufficient ground for the presumption of a grant; but if the enjoyment can be referred to the license of the party over whose lands the right of way is claimed, or can be placed upon any other footing, than a claim or assertion of right, it will repel the presumption of a grant. If the right to the road had been acquired by the appellant, or by those under whom he claims, by *adverse user*, for twenty years; its *non-user* for a like space of time, would extinguish any right they acquired, if with the knowledge and acquiescence of the proprietor of the inheritance; because such *cesser* to use the road, would afford legitimate presumption of a release of the right. *Wright vs. Freeman*, 5 *H. & J.*, 467; *Pue vs. Pue*, 4 *Md. Ch. Dec.*, 387.

The prayer assumed that the use of the road was *conclusive* evidence of the right of way; whereas under any circumstances, it was but a matter of evidence, to be submitted to the jury, from which to infer a grant. It was obnoxious to the valid objection made by the appellant, to the second prayer of the appellees; besides the prayer ignored all reference to the *cesser to use the road*.

Whilst a grant of the right of way may be presumed, from its long use and enjoyment, the release of such acquired right may be inferred from its continued abandonment, or forbearance to use it. The presumptive grant, and the presumptive release, rest on the like basis, and the evidence to support either, is not conclusive, but is a matter to be submitted to the jury, from which they may infer a grant, or release, as the case may be.

The Statute of Limitations is a positive bar, in cases where it applies, but in all other cases, the length of time must be submitted to the jury, *on the basis of presumption. Wright vs. Freeman,* 5 *H. & J.,* 476.

The appellees' prayer as presented, should not have been granted, as we have stated. It was obnoxious to one of the objections we have made to the appellant's.

The adverse possession of the bed of the road, for more than twenty years, did not necessarily preclude the appellant from claiming the re-opening of the road, but from such fact, as a matter of evidence, the jury might presume a release of the right to its use; besides the jury might have been misled from the general terms of the prayer, in undertaking to determine the extent and limitation of the "adverse possession;" and how far it might apply to the claim of the appellant.

The adverse possession capable of conferring the right, or supporting the presumption of release or abandonment, must be against the owner, able in law to assert his rights, and to resist the adverse claim; and therefore, the appellant as holding the inheritance, could not be affected by any *non-user* of the enjoyment, while the land was in the possession, occupation, or control of the tenant for life; unless where its abandonment, or *non-user*, was by his acquiescence, knowledge or authority. *Glenn vs. Davis,* 35 *Md.,* 217; *Washburn on Easements, &c., secs.* 114, 124.

According to the provisions of Mrs. Lawson's will, we think Sarah Browne had but the beneficial use of the

property devised to her, during her natural life. Without undertaking to reiterate reasons for this conclusion, we refer to *Ware vs. Richardson*, 3 *Md.*, 505; *Tongue's Lessee vs. Nutwell*, 13 *Md.*, 415; *Hatton vs. Weems*, 12 *G. & J.*, 83.

If the right to use the road had been acquired by those under whom the appellant claims title, its *non-user* and abandonment by the tenant for life, for a sufficient time, to destroy or defeat that right, would not prejudice his claim, unless, as will be explained hereinafter, he has in some manner, by his own act or acquiescence, waived or abandoned his right.

This disposes of all the questions strictly before us, under the appeal taken, but as the case must be sent down for a new trial, it is proper to state our views, as to the appellant's exceptions, from which no appeal has proceeded—as we have stated, we concur with the Court below, in overruling the objections of the appellees to the admission of the plat, coupled with the offer to prove its identity, in the appellees' first bill of exceptions.

No error was committed in the refusal of the appellees' first and third prayers, indeed the appellees have abandoned the third prayer.

But we think the fourth prayer of the appellees ought to have been granted.

It seems from the evidence, that the road in question, if it ever existed as a reservation, at the sale of Mrs. Lawson's property, or was otherwise acquired as a servitude on the property now claimed by the appellees, was closed by Patterson, who had purchased the lots, in the year 1829; and was then opened or closed by him, as it suited his convenience. Mr. Browne, the appellant, states, that when he visited the premises in the year 1842, the road was closed, and he was obliged to take another route to get to Font Hill. He told his aunt, holding the life interest, about it; and she said it had not been done by her

consent. No steps, however, seem to have been taken by any of the parties to have the road opened. The appellees became entitled to the property in the year 1849, at which time the road was closed; and there is no evidence that they were aware of any right or claim to the road.

It appears there was no record of the road, to which they could resort, for the purpose of ascertaining if there was such an easement on the property.

The appellant, according to his own statement, had some information, or belief, as to the right of way through the property of the appellees to Font Hill.

He states, he knew the property quite intimately since 1848. He knew that the road was closed in 1842, but don't recollect that he told his aunt the road was closed, until after his visit in 1848, when she resided in Baltimore, about 1849–50. He thinks he notified the appellees in 1858-9, of his intention to claim the road. Don't recollect of giving them written notice, or informing the Board officially of his intention.

. It thus appears, that although the company had purchased the property in 1849, when the road was closed, and when they were ignorant (from any thing shewn) of any intention to assert a right to the road, or that there was any dormant right; and after the life tenancy had terminated in 1855, the appellant gave no formal notice to the Board of his intention to claim the road. John Morrow, one of the trustees of the company and of the committee to take charge of the Cemetery, testifies, that many dead are buried on the property—most thickly in the centre, near the appellant's property; and that he never heard of a right of way, claimed by the appellant, prior to this suit.

If the property of the appellees ever was incumbered with the servitude of this road through it, enuring to the benefit of the appellant, as the proprietor of the dominant estate, he certainly has shown great remissness and want

of due vigilance in the assertion of his rights; more especially, as against the appellees, who have been preparing and using the property, including the bed of the road, for a Cemetery, the receptacle of the dead, whose right of peaceable and quiet asylum has, incidentally, if not primarily, become involved in this question.

The company occupying and employing the property for such laudable purpose, and under the peculiar circumstances, so well calculated to arrest the attention of all parties having claims upon it, and to prompt them, if so inclined, to the earliest assertion and notice of them, is certainly entitled to the most liberal construction of the sound doctrine of *estoppel in pais,* if applicable; because of the use to which the property was being devoted and dedicated.

The appellees have in charge the remains of the dead, whose right of sepulture should not be disturbed, except upon most unequivocal legal grounds; and the appellant, in undertaking to invade their domain, and to dispossess the trustees, ought to be able and prepared to vindicate his claim, and to show by clear and unmistakable proof, that he has been guilty of no *laches.*

Their possession and appropriation of the property, after their purchase in 1849, when the road had been long discontinued, and without notice of the claim of the appellant, was, certainly, not that sort of "encroachment on the soil, or rights of the appellant, as amounted to an *acknowledged tort,* equally known and open to the notice of both parties, which confers no right, until it has continued for such length of time, without interruption, as to give effect to the limitation of the right of action for the disturbance," to use the language adopted in *Tongue's Lessee vs. Nutwell,* 17 *Md.,* 230; but comes within the principle, with its qualification, recognized in the above case, and also in the case of *Casey's Lessee vs. Inloes, et al.,* 1 *Gill,* 502.

The principle is this, where one stands by and sees another laying out money upon property, to which he has some claim or title, and does not give notice of it, he cannot afterwards, in good conscience, set up such claim or title; except where the encroachment is on land, the title to which is equally well known or equally open to the notice of both parties; where the claim is under some trust, lien or other right, not equally open and apparent to the parties, the principle applies in favor of one who would be deceived by such want of notice. In such case the doctrine of *estoppel in pais* affords a protection to the party misled by the conduct of the other party.

The prayer of the appellees assumes this theory of the facts, and if the circumstances of the parties, in regard to the road in question, sustain the proposition of the prayer, the appellant is precluded from recovery for the obstruction of the road, even if the evidence were sufficient to establish the easement through the property, by long antecedent *user* and enjoyment.

After the termination of the life tenancy in the property, if the appellant, as the proprietor of the inheritance of the alleged dominant estate, acquiesced in the abandonment of the road, and allowed the appellees to make the improvements suitable for the burial of the dead, without the earliest and amplest notice of his rights, he is precluded from the resumption of the easement; because, by his *laches*, he has induced others to expend their money; and in this case for a sacred purpose. It is just he should suffer loss, rather than those deceived and misled by his neglect. Under such circumstances he will be considered as waiving and abandoning his claim.

*Judgment reversed and*
*new trial ordered.*

(Decided 18th December, 1872.)

ALVEY, J., who was not present at the conference when the opinion filed in this case was submitted and approved,

and did not see the opinion until after it was filed, desires to be considered as not participating in the decision.