## Reed's Estate.

*Contracts—Separation agreements—Provision for wife's main-
tenance—Security—Disposition of security on husband's death—
Construction—Intention.*

In a separation agreement between husband and wife wherein
both parties released what rights they respectively had in the sepa-
rate estates of the other, the husband promised to pay his wife
$1,800 per annum during her natural life and to satisfactorily se-
cure such payments. On the same day the parties executed an-
other instrument which by its terms was to bind their heirs and
personal representatives, and was to be construed as part of the
separation agreement and which stated that the husband had placed
in trust certain stock for the purpose of securing the annual pay-
ments and that in the event of the husband's death before the wife
the trustee should divide the trust property equally between the
husband's personal representatives and the wife, and that the hus-
band was not thereby released from any of the covenants in the
separation agreement. The stock was duly conveyed to the trustee.
Upon the husband's death the Orphans' Court decided that the wife
who had accepted one-half of the stock was not entitled to further
payments under the separation agreement. *Held,* reversing the
court below, that the wife was entitled to half the pledged stock
and to the annual allowance provided in the separation agreement
during the balance of her life.

Argued Oct. 20, 1914. Appeal, No. 152, Oct. T., 1914,
by Amanda Reed, from decree of O. C. Allegheny Co.,
Dec. T., 1913, No. 6, dismissing exceptions to adjudi-
cation in the Estate of Hugh A. Reed, Deceased. Be-
fore FELL, C. J., BROWN, MESTREZAT, POTTER and
MOSCHZISKER, JJ. Reversed.

Exceptions to adjudication. Before TRIMBLE, J.

The opinion of the Supreme Court states the case.

The court dismissed the exceptions. Amanda Reed
appealed.

*Error assigned* was in dismissing exceptions.

*E. Cooper Shapley*, with him *A. L. Petty*, for appellant.

*William W. Wishart*, with him *J. Roy Dickie* and *Wishart & Dickie*, for Eliza A. Reed and Annie M. Linhart, appellees.

*Patterson, Crawford, Miller & Arensberg* filed a paper book for Pittsburgh & Allegheny Home for the Friendless, appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, January 2, 1915:

On June 20, 1906, H. A. Reed and Amanda, his wife, entered into a written contract, which recites that they had agreed to live apart and were "mutually desirous of amicably adjusting all controversies and differences existing between them without recourse to law for a formal legal separation." The agreement then provides that Mr. Reed shall pay his wife $1,800 per annum "during her natural life," and further, that he shall secure, "by such security as shall be satisfactory to said second party [Mrs. Reed], payment of the allowance for her maintenance as aforesaid." Both parties to the agreement released and surrendered all rights which they respectively had in the separate estate of the other, and agreed "that this contract shall bind them, their executors, administrators, heirs and assigns." On the same day they executed another paper, which first refers to the separation agreement, and then recites that "said first party [Mr. Reed] has covenanted to pay unto said second party [Mrs. Reed] the annual sum of $1,800 ......for her maintenance during her life," that "said first party has covenanted to secure such payments unto said second party for her maintenance by such security as may be satisfactory to her," that "said first party has offered as such security certain stock of the par value of $20,000......," and that "said security is

satisfactory to said second party"; then, after naming a trustee to hold the stock in question, the writing proceeds to declare a trust calculated to carry out the purposes of the separation agreement and to assure to Mrs. Reed "her maintenance," or annual income of $1,800 "for life"; it then provides: "That in the event that said first party shall die before said second party, then said trustee shall forthwith divide, or cause to be divided, equally between said second party and said first party's personal representatives the property so held in trust, and said trustee shall sell, assign, transfer, deliver or convey, freed and discharged from any trust, said respective half interests unto said second party and said first party's personal representatives, respectively," and, finally, "It is hereby mutually understood and agreed that the terms of this agreement shall bind the said respective parties hereto, their heirs, executors, administrators or assigns, and that this agreement shall be construed with and be considered as a part of the separation agreement entered into by said first and second parties on the day and date of this agreement; Provided, however, that nothing herein contained shall release said first party from any of his covenants contained in the said separation agreement."

Mr. Reed died, and upon the adjudication of his estate, the Orphans' Court determined that, since his widow had accepted the one-half of the stock pledged as security, the annual allowance granted her "for life" ceased, and that she had no right "to have sufficient of the corpus of the estate to produce $150 per month set aside for her and invested for her benefit during her lifetime." This was error.

The writings are clear and unambiguous, therefore they require and permit of no speculation as to their meaning; yet, instead of simply considering the words used, according to their ordinary signification, and then construing the contract, the court below stepped beyond the bounds of interpretation into the realm of creation,

and through a process of speculative reasoning concerning what is called "the spirit" of the contract, the learned judge who wrote the adjudication and the opinion dismissing the exceptions thereto, built up an essentially different agreement from that indicated by the plain terms of the documents themselves. Under the arrangement made by Mr. Reed with his wife, as evidenced by these documents, he covenanted that she should receive $1,800 per year, in monthly installments of $150, "during her life," and we find nothing to limit, restrict or change that covenant. The parties made their own contract, and under the plain terms of the writings at bar, upon the death of Mr. Reed, the appellant was entitled to the one-half of the pledged stock and also to have the annual allowance therein provided continued for the balance of her life.

The assignments of error are sustained, and the record is remitted to the court below with directions to modify its decree in accordance with this opinion; the costs to be paid out of the estate of the decedent.