Huffman, Appellant, v. Huffman, Administratrix.

Argued April 11, 1932.

Before TREXLER, P. J.,

Keller, Gawthrop, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*Frank B. Quinn,* and with him *Charles H. English* of *English, Quinn, Leemhuis and Tayntor,* for appellant, cited: Stumpfs' Appeal, 116 Pa. 33; Reed's Estate, 247 Pa. 441; Book's Estate, 297 Pa. 543; Young, Administratrix v. Gongaware, 275 Pa. 285.

*S. L. Gilson,* and with him *A. M. Milloy,* for appellee, cited: Patton v. Patton, 2 Pennypacker 394; Dickinson v. Calahan's Administrators, 19 Pa. 227.

Opinion by Cunningham, J., July 14, 1932:

Defendant's decedent, Albert F. Huffman, and plaintiff, Agnes V. Huffman, were at one time husband and wife; they had two children, Edward, sixteen years of age at the date of suit and Margaret, then nine. While living separate and apart, they entered into a written agreement, under seal and dated December 24, 1928, providing for the conveyance by the husband to the wife of certain real estate and for monthly payments by him for the support of the children.

The sixth paragraph reads: "The party of the first

part [the father] shall pay to the party of the second part [the mother] the sum of thirty dollars ($30.00) on the first day of each and every month hereafter in sickness and in health for the support and maintenance of Margaret Huffman until such time as the said Margaret Huffman shall become self-supporting.'' A like provision followed relative to the support and maintenance of Edward.

On April 13, 1929, Agnes V. Huffman was granted a divorce and her former husband died, testate, May 1, 1930. In the meantime he had entered into a second marriage and his widow, Winifred Cecelia Huffman, became the administratrix, c. t. a., of his estate. The monthly payments stipulated in the contract were made by the decedent from its date until his death. His administratrix having refused to continue them, this action was brought by Agnes V. Huffman upon the contract to recover from the estate of her former husband the instalments alleged to have accrued since May 1, 1930.

To her statement, pleading the above facts and averring that neither child is self-supporting, the defendant administratrix filed an affidavit of defense in the nature of a demurrer, setting up want of consideration and that the agreement ''was personal between the plaintiff and Albert F. Huffman and is not binding in any way on his administratrix, except for any part thereof which he had not performed at the time of his death.'' The court below decided the questions of law raised by the statutory demurrer in favor of the estate and from the judgment entered for the administratrix we now have this appeal by the plaintiff.

The agreement in this case is not the usual agreement between a husband and wife to divide their property and live separate and apart from each other. The wife does not seem to have assumed any obligation thereunder; she did not expressly agree to provide a home for the children or to maintain them upon the

stipulated payments, nor did she release her dower rights in her husband's real estate, or relieve him of his legal obligation to support her. She averred in her statement that her husband had wilfully and maliciously deserted her and knew she contemplated applying for a divorce, and that the contract was made in order to provide for the support and maintenance of the children "notwithstanding any divorce proceedings." It is recited in the contract itself that the parties "have agreed to live separate and apart," and apparently the only undertaking by the wife is that she agrees her husband may live separate and apart from her. The other provisions of the agreement are covenants upon the part of the husband; first, to convey to his wife the property known as No. 433 East Sixth Street, Erie, free and clear of all liens and encumbrances; and secondly, to make the specified monthly payments for the support and maintenance of their children. The case at bar differs from that of Marshall v. Marshall, 61 Pa. Superior Ct. 513, in that the mother there agreed "to keep a home for their boy" in consideration of receiving $250 per month from the father, and the action upon the verbal contract to that effect was brought in the lifetime of the father.

As the suit here is not for instalments which became payable prior to the death of Albert F. Huffman, but for those alleged to have accrued subsequent thereto, we are not so much concerned with the question of the enforceability of the contract against him in his lifetime (as to which he raised no issue but made the payments regularly) as with the problem whether its provisions, even if they could have been enforced against him personally, are now binding upon his administratrix.

Entirely aside from the contract, he was under a readily enforceable legal obligation to support his wife and minor children, but this obligation terminated at

his death. The controlling question here is whether the covenants relative to the support of the children are executory undertakings of such a personal nature as to bring them within the exception to the general rule that executors and administrators are bound, to the extent of assets in their hands, by the covenants of their decedents; in other words, whether liability terminated at the death of the covenantor.

The proposition is not free from difficulty and counsel for appellant concede there is no precedent in our state directly ruling this case. These parties did not bind their "heirs, executors, and administrators" as did those in Book's Estate, 297 Pa. 543. Under the contract in that case, the parents of a daughter, less than two years of age, agreed to "relinquish all their rights to [her] custody and control" to an aunt, who, in turn, bound "herself, her heirs, executors [and] administrators" to maintain, provide for and educate the child until she reached legal age. Upon the death of the aunt, shortly after the contract was executed, it was held that the agreement was enforceable against her estate. One of the reasons for the conclusion was that the "words of the agreement" show the aunt intended "to bind her heirs, executors and administrators to the fulfillment of the contract so as to prevent its ending at her death."

Under our decisions, however, the inclusion or omission of executors and administrators in the contract does not seem to be decisive. In Patton v. Patton et al., 2 Pennypacker 394, a husband entered into an agreement of separation with his wife in which he agreed, "for himself, his executors and administrators," inter alia, to "allow her for her support the sum of four hundred dollars per annum, to be paid quarterly in advance." Eleven years later he died, testate, and devised his residuary estate in trust, among other things, to carry into effect the provisions of that agreement. The widow elected to take against

the will and for a consideration released her dower. The action was against the personal representatives of the husband to recover quarterly instalments from the date of his death up to the time of suit. It was argued in behalf of the estate that it was liable only for any instalments accruing during the lifetime of the decedent. The trial judge charged that the contract was personal and directed a verdict for the executors. Upon appeal, the Supreme Court affirmed in a Per Curiam opinion reading: "We concur fully in the opinion of the learned judge of the court below, as expressed in his charge to the jury, that this was a personal contract, not binding on the executors of the husband."

Reed's Estate, 247 Pa. 441, cited in behalf of appellant, does not furnish material assistance; there the annual allowance to the wife was to be paid during her life and the parties not only bound their personal representatives but also inserted express provisions to become effective if the husband should predecease his wife.

Another case relied upon by appellant is Stumpf's Appeal, 116 Pa. 33. That was an action by the mother of an illegitimate child against the executors of its putative father. At her instance an indictment had been found in the quarter sessions and she had brought an action in the common pleas for breach of promise to marry. With these cases pending, the parties entered into a written agreement in which she agreed to have the criminal case withdrawn and the civil action discontinued and the defendant in those proceedings agreed to pay the costs, pay her a fixed amount in cash, relieve her from any cost or expense in the support and maintenance of the child and see that it was well cared for in the custody of a designated person. There was no question about the mutuality of the contract. Several years later the covenantor died, testate, without making any provision for the performance of

the agreement. At the audit of the account of his executors, the mother claimed support and maintenance for the child, in accordance with the terms of the agreement, and the auditor directed that $3,000 be retained at interest by the executors and $200 paid annually for the maintenance of the child during its minority. The court below reversed the auditor, holding that by the contract the decedent had merely assumed the duties of a parent and so long as he lived the contract was binding on him in that relation, but as the child could have been disinherited, if it had been legitimate, the duty and obligation of the decedent to support it ceased at his death.

Upon appeal by the mother, the Supreme Court, after referring to the general rule relative to the liability of personal representatives upon the contracts of a decedent, and the exception thereto, held that the agreement had a wider scope and effect than had been given it by the court below, and, under the circumstances, created a relation between the mother and the decedent "altogether different from the legal relation that exists between parent and child." Attention was directed to the fact that appellant, as the mother of the illegitimate child, was liable for its maintenance and support and the decedent had, by his contract, undertaken to relieve her from that obligation. The action of the court below was accordingly reversed and the conclusions of the auditor approved.

The foundation upon which the conclusion of the Supreme Court rested in the case cited is not present in the case at bar. The contract here did not create any different or more extensive liability on the part of the father than the law had already imposed upon him. We must, therefore, consider this contract in the light of its subject matter and the situation of the parties when it was made; we are not concerned with its wisdom or folly; our sole endeavor must be to as-

certain what the parties meant by their agreement as they wrote it.

They were then husband and wife but by mutual consent were living separate and apart. For present purposes we must accept the averments of the statement. It is there averred that the husband had deserted his wife and children and knew she was contemplating divorce proceedings and that the "contract was made in order to provide for the support and maintenance" of the children. Manifestly, an equally strong purpose was to provide for the support of the wife; specific and detailed provisions were inserted under which real estate of considerable value was turned over to her. She evidently realized that if she secured a divorce her husband's obligation to support her would cease; hence the provisions for her protection. The contemplated divorce, however, would not affect the father's liability for the support of his children. Apparently, the mother was to have their custody and the provisions for their maintenance were inserted as indicative of what the parties considered a reasonable measure of the father's liability. The stipulation that he would make the payments "in sickness and in health" seems to have been a precaution against the possibility that he might attempt to evade or reduce the payments in the event of his illness. We cannot see that the use of this phrase supports appellant's present contention; if it was intended to have any bearing thereon, its insertion would seem to indicate that the parties were contracting only with reference to conditions which would exist during the father's lifetime. No mention was made in the agreement of the intention of the wife to apply for a divorce, nor do we find any indication in its language that the parties intended or believed that any liability incurred thereunder should or would extend beyond the lifetime of either party.

If the mother had died first, it would hardly be

contended that the father could have compelled her personal representatives to maintain the children upon the payment by him of $60 per month.

Appellant was under no obligation to apply for a divorce; her obtaining of it, and thereby affording her former husband an opportunity to marry again with the effect of assuming additional legal obligations, was a voluntary act on her part. The statement of claim contains no averments relative to the extent of Huffman's estate at the time of his death or the disposition made of it by his will, nor does appellant complain of any failure of the court below to grant her leave to amend: Lundberg v. Hemphill, 103 Pa. Superior Ct. 6. It may be assumed, under all the circumstances, that his will contained no provisions for his children or reference to the agreement, but unless his contract with appellant created an obligation different and greater in extent than that growing out of his status as a parent, as in Stumpf's Appeal, supra, he was within his strict legal rights in disinheriting his children, whatever may be thought of his apparent lack of natural affection for them.

A majority of the members of this court think the covenants sued upon were personal and, as the decedent performed them up to the date of his death, appellant has not stated a valid cause of action against his personal representative.

Judgment affirmed.