## MARYLAND AND PENNSYLVANIA RAILROAD COMPANY *v.* MERCANTILE-SAFE DEPOSIT AND TRUST COMPANY, EXECUTOR

[No. 75, September Term, 1960.]

*Decided December 21, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*James F. Offutt, Jr.,* with whom was *James C. L. Anderson* on the brief, for the appellant.

*John E. Mudd* and *Daniel B. Leonard,* with whom were *Bowie, Burke & Leonard* on the brief, for the appellee.

HORNEY, J., delivered the opinion of the Court.

When the Circuit Court for Baltimore County in an action of ejectment filed by the Mercantile-Safe Deposit and Trust Company, executor of the estate of William L. Gilmor, deceased (Gilmor estate or plaintiff) against the Maryland and Pennsylvania Railroad Company (railroad company or defendant) entered a judgment in favor of the Gilmor estate for the recovery of the possession of a sixty-foot strip of land containing 2.1 acres held by the railroad company under a claim of title by adverse possession, the railroad company appealed.

The strip of land in question traversed other land owned by the Gilmor estate and had been used for railroad purposes until November of 1958 when the company ceased all railroad operations over the land and removed the rails and ties therefrom. The plaintiff proved a "good" paper title to the 2.1 acres, in addition to other land adjacent thereto, dating back to the original patent in 1801. The defendant, being without any documentary evidence of title, relied on its adversary possession of the land and offered evidence to show use of it by the railroad company and its predecessors as and for a railroad right of way since 1880. Upon these facts the trial court held that the adverse holding of the defendant was of an easement only and that it had been abandoned by nonuser.

On appeal, the railroad company seeks a reversal of the judgment on three grounds: (i) that the lower court erred when it concluded that the defendant had acquired only an easement by its adversary possession; (ii) that the removal of the rails and ties from the right of way[1] did not constitute

---

1. In railroad parlance, as was pointed out in *Quinn v. Pere Marquette Ry. Co.,* 239 N. W. 376 (Mich. 1931), the term "right of way" has two meanings: in one sense it is "the strip of land upon

an abandonment; and (iii) that the admission into evidence of a deed from Gurdon K. Tyler and wife to the Baltimore and Delta Railway Company, dated November 26, 1880, for another parcel of land (not the land in question) for "railroad purposes generally" was prejudicial error.

(i)

With respect to whether the defendant-railroad acquired an estate in fee or an easement, it appears that this Court has not heretofore been required to decide this precise question. The weight of authority, however, impels us to hold that all the defendant acquired by its long use of the land in question was a right of way easement.

The general rule is that a railroad company acquires only an easement in a right of way by prescription. The principal reason advanced in support of the rule is that the nature of the user by the railroad requires no more than an easement in the right of way and does not, therefore, amount to an occupancy adverse to the claim of another to the fee. Annotation, 127 A.L.R. 518, 519. See also the law note in 27 Rocky Mt. L. Rev. 73, 78 (1955) ["Most courts hold, partly because of the policy factors involved, that a railroad takes only an easement by prescription when it acquires its right of way by limitation"]; and the note in 39 Mich. L. Rev. 297, 298 (1940) ["Usually, if the land was acquired for right-of-way purposes, it can be used by the railroad only for railroad purposes"]. And see 44 Am. Jur., *Railroads,* § 99, 74 C.J.S., *Railroads,* § 85.

In *People v. Ocean Shore R.R.,* 196 P. 2d 570 (Cal. 1948), the predecessor of the railroad entered on the land in question and constructed a right of way thereon. The entry was without the consent of the owners and the railroad did not take a conveyance. Some years thereafter the railroad ceased operations and removed all rails and ties from the right of way. In denying any compensation for a subsequent taking of the

---

which the track is laid"; in the other sense it is "the legal right to use such strip," and in this sense it usually means the right of way *easement.*

right of way by condemnation, the Supreme Court of California had occasion to say, at p. 576:

> "Railroads, like individuals, may acquire fee title by adverse possession. * * * The general rule, however, is that a railroad which enters without color of title and uses a right of way ordinarily gains merely a prescriptive right to an easement and does not acquire title to the fee."

Other cases considering the problem have reached a like result. See *Consumers' Gas Trust Co. v. American Plate Glass Co.,* 68 N. E. 1020 (Ind. 1903) ["Ordinarily, at least, there is no user by a railroad company beyond a user for the purposes of a right of way"]; *Meyer v. Pittsburgh C., C. & St. L. Ry.,* 113 N. E. 443 (Ind. 1916) ["It is also the general rule that where a railroad right of way is acquired by prescription, the company takes only an easement"]; *Corning v. Lehigh Valley R.R. Co.,* 191 N. Y. S. 2d 25 (Cty. Ct. 1959) ["Whether by virtue of the * * * (reservation in a deed), or by virtue of continued use and occupation * * * defendant has permanent easement for railroad purposes"]. For further citations see 127 A.L.R. 517, *supra.* Cf. *Hodges v. Owings,* 178 Md. 300, 13 A. 2d 338 (1940) [deed conveying a right of way "for railroad purposes" conveyed not a fee, but merely a right of way easement].

We think there is an analogy between an individual on the one hand and a railroad on the other, and we see no valid reason why a railroad should acquire a greater right or estate in a right of way easement by prescription than an individual could acquire in a similar incorporeal right by the same means. Cf. *Bishields v. Campbell,* 200 Md. 622, 91 A. 2d 922 (1952), where it was stated that the character and extent of the permissible use of an easement acquired by prescription is commensurate with and determined by the character and extent of the use during the prescriptive period. See also 4 Tiffany, *Real Property* (3rd ed.), § 1150, where it is said: "The statement occasionally made that possession under a claim to a mere easement does not, although continued for the statutory period, confer title to the fee, involves the misconception

that one merely exercising, or undertaking to exercise, an easement in land, has possession, or may have possession, of the land. He does not acquire title to the land by adverse possession, for the reason that he never had possession, adverse or nonadverse." See also Venable, *Title To Real Property and Leasehold Estates,* p. 20, *et seq.* We therefore conclude that the defendant-railroad acquired only an easement in the right of way it had used continuously for nearly eighty years.

(ii)

The next question is whether the removal of the rails and ties from the easement constituted an abandonment of it. We think it did.

The general rule is that the right and title to a *mere* easement in land acquired by a *quasi*-public corporation, either by purchase, condemnation or prescription, for a public purpose is dependent upon the continued use of the property for that purpose, and when such public use is abandoned the right to hold the land ceases, and the property reverts to its original owner or his successors in title. See *Canton Co. v. Baltimore & O. R. Co.,* 99 Md. 202, 57 Atl. 637 (1904), where it was said at p. 218 (quoting in part from *Vogler v. Geiss,* 51 Md. 407 [1879]) :

" 'A cesser of the use, coupled with any act clearly indicative of an intention to abandon the right, would have the same effect as an express release of the easement, without any reference whatever to time.' And this seems to be in accordance with authority as well as reason."

In the *Canton* case, where the easement had been acquired by the railroad company in a condemnation proceeding for a considerable sum of money, where ties and rails had been laid and subsequently removed after the railroad had contracted to use the route and facilities of an adjacent railroad, and where there was positive evidence that the railroad had no intention of abandoning the easement, this Court held that mere nonuser of the easement or the adoption of another route did not necessarily constitute abandonment. But that

case is clearly distinguishable from the instant case in at least one important aspect. In the *Canton* case, even though the railroad also had removed the ties and rails from the right of way, an official of the railroad had positively testified that the railroad had no intention of abandoning the easement, while in the case at bar, as we read the record, there was no evidence disclaiming an intent to abandon the right of way.

While it is true that the burden of proving abandonment rests on the one who asserts or relies on it (*Klein v. Dove,* 205 Md. 285, 295, 107 A. 2d 82 [1954], citing *Sachs & Sons v. Ward,* 182 Md. 385, 35 A. 2d 161 [1943]), the law is well settled that the intent to abandon may be shown by the acts of a party indicating such an intention. *Glenn v. Davis,* 35 Md. 208 (1872). Therefore, since the uncontroverted evidence in the present case was to the effect that the defendant had ceased to operate as a railroad in 1958 and had removed its rails and ties from the right of way, and since time is not an element in abandonment if it is shown that use of the easement has ceased and there has been some act clearly indicative of an intention to abandon the right of further use (*Canton Co. v. Baltimore & O. R.R. Co., supra*), it was proper for the trial court to conclude, as it did, that there had been abandonment. That there could be an abandonment of an easement was clearly recognized by this Court in *Stewart v. May,* 119 Md. 10, 85 Atl. 957 (1912), where, as in the instant case, the acts of abandonment were of a decisive character and clearly indicated an intention to abandon. See also *Knotts v. Summit Park Co.,* 146 Md. 234, 126 Atl. 280 (1924) [whether the act relied on to extinguish an easement amounts to an abandonment depends on the intention with which the act was done]; *Browne v. M. E. Church,* 37 Md. 108 (1872) ["Whilst a grant of the right of way may be presumed from its long use and enjoyment, the release of such acquired right may be inferred from its continued abandonment, or forbearance to use it."].

In *People v. Ocean Shore R.R., supra,* an abandonment was found where the railroad had taken up its track and ceased to operate. There the Court said at p. 578 (of 196 P. 2d):

"It was for the trier of fact to determine whether there was a bona fide intent to preserve the right of way for actual railroad use, and the court could properly conclude that the acts and conduct of defendant were incompatible with the continued exercise of the easement, that the discontinuance of the line was not merely temporary, and that the right of way was abandoned and the easement terminated."

See also *Lacy v. East Broad Top R.R. & Coal Co.*, 77 A. 2d 706 (Pa. Super. 1951) [whether the railroad had actually abandoned the right of way or had effected an intention to abandon it was a question of fact to be determined by the finder of fact]. And see 44 Am. Jur., *Railroads*, §§ 107, 108; *Powers v. Coos Bay Lumber Co.*, 263 P. 2d 913 (Ore. 1953); *Kansas, O. & G. Ry. v. Rogers*, 191 P. 2d 209 (Okl. 1947); *Mammoth Cave National Park Ass'n v. State Highway Com'n*, 88 S. W. 2d 931 (Ky. 1935); *Atlantic Mills of R. I. v. New York Cent. R.R. Co.*, 223 N. Y. S. 206 (App. Div. 1927); *Roanoke Investment Co. v. Kansas City & S. E. R.R. Co.*, 17 S. W. 1000 (Mo. 1891).

Since the evidence in this case was sufficient to justify a finding of abandonment, the lower court in so finding was not clearly erroneous, and we are therefore without authority to set the judgment aside. See Maryland Rule 886.

(iii)

The final question concerning the admissibility of the allegedly irrelevant deed needs little comment. Apparently the document was offered, not to show title to the strip of land in controversy, but only to tend to show that the use of it by the railroad was permissive and not adverse. Cf. *Joseph v. Bonaparte*, 118 Md. 591, 85 Atl. 962 (1912). We need not, however, decide whether admission of the deed was error because, having assumed for the purpose of this decision that the possession was hostile, it does not appear that the defendant-railroad was in anywise prejudiced by the admission of the deed.

The judgment, for the reasons stated, will be affirmed.

*Judgment affirmed; appellant to pay the costs.*