EAST WASHINGTON RAILWAY
COMPANY *v.* BROOKE

[No. 448, September Term, 1965.]

288

*Decided November 9, 1966.*

The cause was argued before HAMMOND, C. J., and MAR-
BURY, OPPENHEIMER, BARNES and McWILLIAMS, JJ.

*Caesar L. Aiello* for appellant.

*Kenneth E. Pruden,* with whom was *George T. Burroughs*
on the brief, for appellee.

MARBURY, J., delivered the opinion of the Court.

This was an action in equity to quiet title to a certain strip
of land lying in Prince George's County, Maryland, 66 feet in
width, which traverses and is located within part of a farm
owned by Mary G. Brooke, plaintiff-appellee. She claimed title
to the land in question by virtue of record title and of the fact
that she has held and occupied the land under color of title for
more than twenty years. The East Washington Railway Com-
pany, defendant-appellant, claimed title by virtue of a certain
deed for the same strip of land used for railway purposes to its
predecessor in title, the Chesapeake Beach Railway Company,
sometimes referred to as Railroad. Judge Loveless of the Cir-
cuit Court for Prince George's County, after hearing the evi-
dence, found that plaintiff had held the property for more than
twenty years and thereby acquired title by adverse possession.
The court also found that if defendant possessed an easement
over the strip of land, the easement had been abandoned by
cesser of uses thereof, coupled with acts clearly indicative of
an intention to abandon it by the defendant. Therefore, the
court found it unnecessary to decide the issue of what title, if
any, was in the defendant. The chancellor also found that the
plaintiff, Mary G. Brooke, had fee simple title to the contested
property. From the decree embodying these findings the de-
fendant has appealed.

The plaintiff was the fee simple owner of a tract of land

known as Lots 4, 6 and 7 according to a survey and subdivision of the estate of Robert A. Clagett, excepting that portion of those lots which was previously conveyed to Louise and Edna C. Berry. The evidence as to the chain of title of the land which plaintiff claimed was that Robert A. Clagett was the owner of a large tract of land which included the strip in question. Robert A. Clagett died testate, leaving a life estate in his widow, who survived him, with a power to sell the land and convey a fee simple title. At the death of Robert A. Clagett's widow, none of the property involved in this case had been conveyed by her. A partition proceeding was filed in which all the devisees under the will of Robert A. Clagett were joined. A "Decree for Partition" was issued by the Circuit Court for Prince George's County decreeing that there be a partition of all of the real estate of which Robert A. Clagett died seized and possessed in Prince George's County. The return of the Commissioners and the survey and resubdivision of this estate included and enclosed the strip of land in question within the metes and bounds description of lots numbered 4, 6 and 7. The return of the Commissioners appointed to make the partition was ratified and confirmed by the court on March 27, 1914. Thus, as of March 27, 1914, record title to Lots 4 and 7 was in one Emily M. Deming, and Lot 6 was in J. Lee D. Clagett. Emily M. Deming and her husband conveyed all of the property allocated to her on April 30, 1914, to William Mason Allen. The deed, which was recorded on May 19, 1914, contained a metes and bounds description of the lots conveyed which included and enclosed the strip of land in question. However, immediately after the metes and bounds description, there was a recital in the deed which summed up the metes and bounds description as "containing 159.22 acres exclusive of the Chesapeake Beach R.R. right-of-way 66 feet wide, * * *." The Allens conveyed, on October 22, 1920, all they received from Emily M. Deming and her husband to Walter T. Townshend.

Lot 6, which was awarded to J. Lee D. Clagett in the partition proceedings, was conveyed to Walter T. Townshend along with all reversionary interest he owned in the Chesapeake Beach Railroad right-of-way by deed dated March 1, 1926. Walter T. Townshend, then owner of Lots 2, 4, 6 and 7, and his wife

conveyed Lot 6 on February 25, 1933, and Lots 2, 4 and 7 on August 26, 1936, to G. Wilmot Townshend. On June 2, 1943, G. Wilmot Townshend and his wife conveyed Lots 4, 6 and 7 to Mary G. Brooke "together with all reversionary interests in the Chesapeake Beach Railroad right of way howsoever acquired and not heretofore conveyed, * * *." The deed was recorded among the land records of Prince George's County on June 4, 1943. Shortly thereafter plaintiff and her husband moved to and entered into possession of the property and have had possession continuously and uninterruptedly since that time. The plaintiff's property lies on both sides of the right-of-way strip in question.

Defendant, East Washington Railway Company, claimed title to the strip of land in question by virtue of a deed from Emily M. Deming to J. Lee D. Clagett dated March 17, 1915, and recorded December 21, 1915, purportedly conveying her interest in the strip of land and by virtue of another deed from J. Lee D. Clagett and others to the Chesapeake Beach Railway Company dated March 24, 1915, purportedly conveying a strip of land running through the lands formerly owned by Robert A. Clagett as was located and used for railroad purposes. The conveyance from J. Lee D. Clagett to the Railroad was subject to certain conditions subsequent which are not pertinent to this decision. At the time of the deed from Deming to Allen, through which plaintiff claimed chain of title, the Railroad had no record title to the land in question.

In January 1898 the Chesapeake Beach Railway Company executed a deed of trust to the Continental Trust Company of New York as trustee to secure an issue of bonds of the railroad company. A suit was brought in the District Court of the United States for the District of Maryland by the New York Trust Company, successor-trustee, for a decree to sell the mortgaged property, and on July 19, 1935, a decree was passed and Charles R. Weber was appointed special master to make the sale. The property, including all of the interest of the railway company in its lands, was sold and conveyed to William V. Hodges, trustee representing the bondholders of the Chesapeake Beach Railway Company, who entered into possession of the land and proceeded to and did remove the ties, rails, and other facilities

from the land. During the time of its operation the land was assessed to the Chesapeake Beach Railway Company, and except for the period when relieved from payment of state and county taxes by Act of Assembly, Laws of Maryland (1931), Chapter 523, at page 1307, the taxes were paid by it. Subsequently William V. Hodges, trustee, conveyed title to the East Washington Railway Company, which still holds paper title and has paid taxes on the property in question to date.

As to adverse possession, it was shown that in June of 1943 the plaintiff entered into possession of the property and has had possession continuously since then. At the time plaintiff moved to her farm, the strip of land here involved was fenced into the rest of the farm. The fences were continuously maintained. Plaintiff used this strip of land in the same manner as the rest of the farm, and more particularly, it was enclosed as a pasture field and used as pasture. Trees were cut off of it, tobacco seed beds were made on a portion of it, and, generally, it was used as a part of the farm. Ever since plaintiff and her husband moved to this farm the property was posted, and a "No Hunting" sign was posted on a tree located on the strip of land in question. There were no rails or cross ties on the strip when plaintiff moved there, and when the farm roads needed repair, cinders were removed from the rail bed and used on the roads. Also plaintiff's husband kept the drainage culverts open and dug drainage ditches. The evidence showed that the fences and use of the land were visible from the former private road available to the owners of all of the lots of the Robert A. Clagett estate, but which has become a public road, now known as Brooke Road, running along the northerly outline of the property. Plaintiff was conveyed 95.71 acres, more or less, exclusive of the reversionary interest, but paid taxes on 100.7 acres, which included the right-of-way strip.

Assuming, without deciding, that Deming had fee simple title to the contested strip of land, and that the deed from Deming to Allen, which was recorded on May 19, 1914, passed all of her rights and interest in the property including the railway strip, the deed from Deming to J. Lee D. Clagett granting title to the same strip could not pass any title since it was recorded on December 21, 1915. Code (1957), Article 21, Section 13. Clag-

ett had nothing to convey to the Railroad, which had constructive notice of the prior recorded deeds. But by its open and uninterrupted use of this strip for over twenty years, the Railroad acquired an easement by prescription. *Ma. & Pa. RR. Co. v. Mer.-Safe, Etc., Co.,* 224 Md. 34, 166 A. 2d 247, discussed in 22 Md. L. Rev. 57 (1962). The removal of the ties and rails, plus the statement of Mr. Rector, the president and general manager of defendant, that the company has no intentions of ever operating a railroad over the contested strip, indicates that the use of the property for railroad purposes has been abandoned. In *Ma. & Pa., supra,* it was stated at page 39 of 224 Md.:

> "The general rule is that the right and title to a *mere* easement in land acquired by a *quasi*-public corporation, either by purchase, condemnation or prescription, for a public purpose is dependent upon the continued use of the property for that purpose, and when such public use is abandoned the right to hold the land ceases, and the property reverts to its original owner or his successors in title."

See also *Hagerstown & F. Rwy. Co. v. Grove,* 141 Md. 143, 118 Atl. 167. Compare *Canton Co. v. Balto. & Ohio R. Co.,* 99 Md. 202, 57 Atl. 637. Because it has abandoned the right-of-way, the Railroad and its successor have no existing claim to the contested strip of land.

If it be assumed, *arguendo,* that Deming passed her interest in the strip to J. Lee D. Clagett, who, with others, passed an interest in the strip to the Railroad, the Railroad cannot assert any claim to it. The deed from Clagett, et al. to the Railroad must be construed in light of the principle that the word "grant" must be construed to pass all of the grantor's interest unless there are indications otherwise. Code (1957), Article 21, Section 9. In the instant case, the deed from Clagett, et al. to the Railroad, in part, reads as follows:

> "[Clagett, et al.] * * * did agree and contract to convey unto the party of the second part [the Railroad] a strip of land for a *right of way* through said lands; and

Whereas, said Emily M. Clagett [life tenant in possession] has since died without having executed unto the said * * * [Railroad] a deed for such *right of way,* * * *." (Emphasis added.)

And in the granting clause the deed stated:

"[Grantors do grant and convey a parcel of land] * * * Being a strip of land sixty feet in width * * * ' as now located and used *for railroad purposes,* * * *." (Emphasis added.)

It is plain that the conveyance was of an easement for railway purposes and use only. See *Ma. & Pa. RR. Co. v. Mer.-Safe, Etc., Co., supra,* and *Hodges v. Owings,* 178 Md. 300, 13 A. 2d 338. This construction of the deed is strengthened by the fact that the intent to convey an easement is clearly manifested in the deed from J. Lee D. Clagett to Walter T. Townshend, wherein Clagett conveyed his reversionary interest in the railroad right-of-way. Thus, the deed of March 24, 1915, to Chesapeake Beach Railway Company was intended only to convey a right-of-way easement.[1]

In the present case, the strip of land in question reverted to its original owners or their successors in title, because the railroad intentionally abandoned the present and future use of the contested strip for railroad purposes. *Ma. & Pa. R. R. Co. v. Mer.-Safe, Etc., Co., supra.* Even though the plaintiff claimed through a chain of title, there is some question that there may be some unaccounted for interests in the reversion. It is against those interests, if any, to which the plaintiff's continuous and open possession under color of title was hostile.

The elements of adverse possession are that the possession must be actual, hostile, open, notorious, exclusive, under claim of title or ownership, and continuous and uninterrupted for twenty years. *Blickenstaff v. Bromley,* 243 Md. 164, 220 A.

---

1. No question as to the right to acquire title to non-operating property of a railroad which it had acquired by private grant or by adverse possession was raised or decided below and none was briefed or argued on appeal. It is not before this Court for decision. See Harmon v. State Roads Comm., 242 Md. 24, 217 A. 2d 513.

2d 558; *Bishop v. Stackus,* 206 Md. 493, 112 A. 2d 472. The plaintiff has lived on and farmed the property which included the strip of land in question for more than twenty years. The strip was enclosed into the rest of the farm by a fence which was continuously maintained and which was obvious to a person on the nearby road. The strip was used as a part of the farm. Compare *Goen v. Sansbury,* 219 Md. 289, 149 A. 2d 17. Both the plaintiff and defendant paid taxes on the disputed strip of land. Neither a record claim of title nor payment of taxes, without open, visible acts of possession, will suffice to support title by adverse possession. *Stinchcomb v. Mortgage Co.,* 171 Md. 317, 188 Atl. 790. The evidence showed that the plaintiff held her land in possession unaccompanied by any other person's right to the land. See *Hungerford v. Hungerford,* 234 Md. 338, 199 A. 2d 209. The evidence clearly indicated that plaintiff held the strip in question in hostile, open, notorious, exclusive, continuous and uninterrupted possession for more than the statutory period.

The acts of the plaintiff in reliance upon her deed from G. Wilmot Townshend which made reference to and incorporated the partition proceedings, and the Deming-Allen deed in which the metes and bounds description included the strip as part of the entire tract, were in comport with the title or claim of one asserting ownership against all the world. *Wanex v. Hurst,* 188 Md. 520, 53 A. 2d 38. The fact that the recital in the deed from Deming to Allen stated that the area conveyed was exclusive of the railroad right-of-way does not affect the results of this case, since the metes and bounds description is superior to the recital which is inconsistent. *Neavitt v. Lightner,* 155 Md. 365, 142 Atl. 109. Thus, plaintiff held under a claim of title as well as possessive ownership. And the result in this case is the same whether or not J. Lee D. Clagett was conveyed an interest in the strip by Deming, since the railroad acquired, under either situation, only an easement which was later abandoned. We hold under the evidence in this case that the trial judge was right in deciding that the plaintiff held fee simple title to the contested strip.

Pursuant to Maryland Rule 835 b (5) plaintiff moved to dismiss the appeal because the defendant failed to include in the

printed extract certain parts of the record as requested by the plaintiff. Plaintiff included the omitted parts in the appendix to her brief. Rule 828 e. It does not appear that plaintiff was prejudiced. *Standard Homes v. Pasadena Co.,* 218 Md. 619, 147 A. 2d 729. Consequently the motion to dismiss is denied. Since the defendant loses on appeal it must pay the costs. Rules 828 e and 882 c.

> *Motion to dismiss appeal denied, decree affirmed. Appellant to pay the costs.*