**UNITED STATES of America**

v.

**1.44 ACRES OF LAND, MORE OR LESS, Situate IN MONTGOMERY COUNTY, MARYLAND, and Thomas E. Bowie Estate, et al.**

**No. 17463.**

United States District Court
D. Maryland.
Sept. 30, 1969.

Stephen H. Sachs, U. S. Atty., and Theodore R. McKeldin, Jr., Asst. U. S. Atty., Baltimore, Md., Philip Zeidner, Anthony Liotta, and Carl Strass, Attys., Dept. of Justice, Washington, D.C., for the United States.

Harrison M. Robertson, Jr., Baltimore, Md., and R. Edwin Brown, Rockville, Md., for defendant D.C. Transit Systems, Inc.

NORTHROP, District Judge.

This is a condemnation proceeding brought by the federal government under 40 U.S.C. § 258(a), 40 U.S.C. § 257, and P.L. 88–252, which authorize acquisition of land for the Washington Aqueduct, Dalecarlia Plant. The government seeks to condemn in fee two long narrow strips of land which adjoin the Potomac River on the Maryland shore to enable it to construct improvements for the Washington Aqueduct, Dalecarlia Plan (Dalecarlia Reservoir) which nearly abuts the two strips. The land which totals 1.44 acres is in two parcels, A–106 and A–110. The government moved for delivery of possession and on July 18, 1966, the court so ordered the advance taking. Judgment has been entered and satisfied as to parcel A–106, leaving only parcel A–110 to be resolved.

At this relatively early stage of the litigation, the only known claimant for parcel A–110 was the D. C. Transit System, Inc., and its claim of title was not being disputed by the government. The

basis for the claim of title was an old trolly right of way operated by D. C. Transit and its predecessors which ran through parcel A–110. The trolley operation which dated back to the 1890's was discontinued in 1960 by order of the Public Utilities Commission of the District of Columbia and the Public Service Commission of Maryland.[1] This action was taken in compliance with the United States Congress' grant of franchise to D. C. Transit in 1956. The franchise grant, P.L. 84–757, called for the discontinuance of trolly service, the substitution of bus service and the removal of the abandoned tracks.[2]

On September 19, 1968, a pretrial conference was held for parcel A–110 at which time a pretrial order was signed by both parties and a trial date set. The pretrial order contained, among other things, the stipulation that

> "the lands involved in this action were owned on the date of taking, in fee simple title of record by D. C. Transit System, Inc."

and pretrial rulings that

> "frustration, by this condemnation, of any alleged future plans of the defendant for the use of this property is not compensable and, therefore, any evidence in relation thereto is inadmissible"

and

> "also inadmissible is any such evidence based on plans the defendants may have had to improve the property that may have been frustrated by this acquisition. Evidence pertaining to the value of the property as if actually improved other than as it was on the date of taking is inadmissible."[3]

Subsequently the defendant requested several trial delays and ultimately new counsel asked this court to rescind the pretrial order and permit it to file an amended answer.

The defendant belatedly sought to assert that the land in question was an integral part of a continuous utility corridor beginning at 38th and Prospect Streets, N.W., Washington, D.C., and continuing to Cabin John, Maryland, a distance of approximately nine miles which might be used for a rapid transit to Dulles International Airport in Virginia. The government vigorously opposed this claim and the belated attempt to amend the answer and rescind the pretrial order, but the court in the interest of fairness permitted the amendment and the rescission, but did not permit the defendant to contest the constitutionality or validity of the taking by the government.

---

1. The Washington Metropolitan Area Transit Commission (WMATC) was created in 1960 to administer transit operations in the District of Columbia and suburban Maryland and Virginia.

2. Section 7 of the franchise grant (P.L. 84–757) reads:
   The Corporation shall be obligated to initiate and carry out a plan of gradual conversion of its street railway operations to bus operations within seven years from the date of the enactment of this Act upon terms and conditions prescribed by the Commission, with such regard as is reasonably possible when appropriate to the highway development plans of the District of Columbia and the economics implicit in coordinating the Corporation's track removal program with such plans; except that upon good and sufficient cause shown the Commission may in its discretion extend beyond seven years, the period for carrying out such conversion

3. Other pertinent rulings contained in the order follow:
   That while consideration may be given to the highest and best use to which this property could be devoted or was adaptable on the date of taking, the fair market value is to be determined for the property as it was on that date, i. e., July 18, 1966, and not as though already devoted or adapted to any prospective and higher use.
   Sales of the same property, or sales of comparable property prior to and reasonably near in time to the date of taking, on the open market, having the necessary prerequisites for fair market transactions, are the best evidence of market value.

At this juncture the government's opposition stiffened considerably. The government now challenges the title of D. C. Transit to the tract in issue here, the title to other tracts which make up the alleged continuous corridor to Cabin John, Maryland, as well as challenging the feasibility of the defendant's claimed highest and best use of a utility corridor. It is the government's position that defendant does not have title to the two pieces of land which make up parcel A–110, that even if defendant does have title to these two pieces any break in the nine-mile corridor would foreclose defendant from contending a utility corridor valuation, and that if defendant did own the continuous corridor its use as a rapid rail corridor was speculative, improbable, and unfeasible since additional land would be needed to reach Dulles International Airport and no license for such a rapid rail has been granted or, for that matter, sought.

To present its contentions in an orderly fashion, it was decided the government would first challenge the title to tract A–110, then if title were found to be in the defendant it would raise other claimed breaks of title in the alleged corridor. And if the defendant was found to have a continuous corridor to Cabin John, then the government would take up the issues of feasibility of the proposed highest and best use of high speed rail to Dulles International Airport.

To this end the government has filed a motion for summary judgment contending that the defendant held this right of way by easement and has abandoned it and the full interest now resides in third-party owners of the fee. The defendant contends in opposition that the government is now estopped from asserting lack of title, that the deeds of defendant show that D. C. Transit holds the land in fee and that there is evidence of ownership which clearly negates any claimed abandonment. The government has also amended its complaint to include a number of parties who the government contends have a claim of ownership.

The parties have agreed on a stipulation of facts which is reprinted here and have submitted the issue of title to parcel A–110 to court determination.

Stipulation In Connection With Title

It is hereby stipulated by United States of America, Condemnor, and D. C. Transit Systems, Inc., Landowner and Condemnee, in connection with the question of title to the land described in these condemnation proceedings, being parcels Nos. 36 and 37 in the Landowner's Title Exhibit as follows:

1. The following attached exhibits are stipulated in evidence before the Court:

a. 27 Stat. 326 and 70 Stat. 598.

b. Public Utility Commission of the District of Columbia Order No. 4602.

c. Public Service Commission of Maryland Order No. 54240.

d. I.C.C. and WMATC Certificates, Nos. MC68167 Sub. 34 (I.C.C.), Four (W.M.A.T.C.), Five (W.M.A.T.C.), MC77476 (I.C.C.), and 186 (W.M.A.T.C.).

e. Capital Transit Company family tree.

f. Deed Liber JA 51, folio 339, O'Neale to West Washington and Great Falls Electric Railroad Co.

g. Circuit Court Decision No. 3204 Equity.

h. Resulting Deed, Liber P.B.R. 304, folio 180, William H. Talbott to Washington Railway Electric Co.

i. Deed, Liber P.B.R. 472, folio 451, Penn to A. J. Watkins Realty Co.

j. Quitclaim deed, Liber 2828, folio 92, Penn to D. C. Transit Co.

Also, stipulated in evidence before the Court is a Plat of Brookmont, already in the Court's possession.

2. The Defendant and Condemnee has paid real estate taxes on the land to Montgomery County, and the State

of Maryland from the date of the deeds to the property in question as part of a railroad right of way.

3. The Falls Church Water Company has a pipe line in the property by virtue of an easement agreement between D. C. Transit System, Inc., grantor, and the City of Falls Church, Virginia, grantee, dated the 31st day of March, 1961, and recorded in Liber 2840 at Folio 489 of the Land Records of Montgomery County, Maryland.

4. The Potomac Electric Power Company acquired its 'license' to put power lines in the right of way by virtue of a reservation of rights in an Indenture dated December 1, 1933, by and between Washington Railway and Electric Company and Capital Transit Company; the lines presently on the premises were installed approximately 10 to 15 years ago.

5. The Plaintiff does not contend at the present time and for purposes of this Motion that the mere cessation of the running of trains constitutes an abandonment.

6. The Defendant and Condemnee has exercised indicia of ownership over the parcels in question, to wit, the exclusion of trespassers and encroachers, the maintenance of the right of way, payment of taxes, 'licensing' of Potomac Electric Power Company and the Falls Church Water Company.

7. That the Defendant and Condemnee has investigated the feasibility of using the right of way in connection with the construction and operation of a passenger and baggage monorail line to Dulles Airport, and has a report on this feasibility prepared by Colonel Bingham which was ordered about June, 1961.

8. The Defendant and Condemnee removed the rails and copper from the right of way in 1960, and the salvage value was more than the removal cost.

9. It is stipulated that D. C. Transit System, Inc., has acquired such title to the O'Neale and Talbott tracts as was acquired by the original corporate Grantees.

■■■ As a preliminary matter this court declines to hold the government is estopped from challenging the defendant's title. Rule 71A(c) (2) of the Federal Rules of Civil Procedure requires that all persons having or *claiming an interest* in the property be served. As it was equitable for this court to relieve the defendant of the pretrial order of September 19, 1968, so it was equitable to relieve the government of that order. Thus, when this court rescinded that order, it rescinded the entire order. *Ab initio* the government may, of course, challenge a claimant's title, United States v. 93.970 Acres of Land, 360 U.S. 328, 79 S.Ct. 1193, 3 L.Ed.2d 1275 (1959); Humboldt Placer Mining Co. v. Best, 293 F.2d 553, 556 (9th Cir. 1961). The government's position here is understandable. Prior to the amendment this case involved compensation of approximately $5,000; should the defendant's theory ultimately prevail this case involves compensation far in excess of that amount.

Both sides agree that the burden of showing prima facie title is on the defendant, but the burden of showing abandonment is on the government.

Taking the issues in inverse order, it is the government's position that this abandonment occurred in 1960 when the defendant requested and was ordered to discontinue trolley service and to substitute instead bus routes which traversed nearby streets. This request by defendant was made pursuant to mandate of Congress in granting the franchise.[4] As mentioned, the operating licenses and the commission orders are in evidence and extracts of the orders are reprinted

---

4. *See* footnote 2 *infra.*

below.[5] The defendant, on the other hand, points to his payment of taxes, granting of easements, and exclusion of trespassers as evidence of non-abandonment.

5. The Public Utilities Commission of the District of Columbia on December 21, 1959, ordered:

By letters dated November 24 and December 14, 1959, D.C. Transit System, Inc. requested authority to abandon streetcar operations and substitute bus operations on the following lines:

Cabin John Line, Route 20

Tenleytown—Pennsylvania Avenue Line, Route 30

"Georgia Avenue—7th Street Line, Routes 70, 72 and 74

D.C. Transit System, Inc. is obligated to initiate and carry out a plan of gradual conversion of its street railway operations to bus operations within seven years from July 24, 1956, and the Commission is of the opinion that this application should be granted. Therefore,

IT IS ORDERED:

Section 1. That D.C. Transit System, Inc. is hereby authorized and directed to abandon street railway service on the following sections of its lines:

. . .

Section 2. That D.C. Transit System, Inc. is hereby authorized and directed to operate bus service over the following routes:

. . .

The Maryland Public Service Commission on the following day ordered:

On December 10, 1959, D.C. Transit System, Inc., applied to this Commission for an order authorizing it to discontinue the Maryland portion of its Cabin John streetcar line, Route 20, and to substitute therefor a new bus line to be known as the Cabin John Shuttle bus line, Route 20, effective January 3, 1960.

The Commission has received communication from civic organizations and others expressing concern with respect to the Company's proposal and emphasizing the inconvenience to some patrons because of the necessity to transfer twice in order to reach their destinations in the District of Columbia if the Company's proposal were put into effect as submitted.

By an Act approved July 24, 1956, the Congress of the United States granted to D.C. Transit Systems, Inc.,

■ While it is true, as the defendant states, that abandonment is not favored in the law, the court is inclined to agree with the government that under Maryland law an easement for railway

a franchise to operate a mass transportation system within the District of Columbia and between the District of Columbia and points within an area referred to as the Washington Metropolitan Area, which includes Montgomery and Prince George's Counties, Maryland. Section 7 of the franchise provides that D.C. Transit Systems, Inc., shall be obligated to initiate and carry out a plan of conversion of its streetcar operations to bus operations. By action taken on December 21, 1959, the Public Utilities Commission of the District of Columbia authorized and directed D.C. Transit System, Inc. to abandon street rail service on the portion of the line in question within the District of Columbia and to operate bus service in place thereof within the District. In doing so, that Commission directed the Company to operate direct bus service during week-day rush hour periods between the downtown area of Washington and the District of Columbia terminal of the Cabin John shuttle bus line so as to eliminate the need for one of the transfers to which objection has been made.

In view of the action taken by the Congress of the United States and the authority given by the Public Utilities Commission of the District of Columbia, and in view of the further fact that no adequate rail turnaround facilities are available where the Cabin John street car line crosses the Maryland District of Columbia line, the Commission has no alternative but to grant the application.

After consideration of the matter, IT IS THEREFORE, this 22nd day of December, in the year Nineteen Hundred and Fifty-nine, by the Public Service Commission of Maryland,

ORDERED: That D.C. Transit System, Inc., be, and it is hereby, authorized to discontinue the Maryland portion of its Cabin John streetcar line, Route 20 and to substitute therefor a new bus line to be known as the Cabin John shuttle bus line, Route 20, effective coincidently with the discontinuance of rail service on the Cabin John line within the District of Columbia as authorized by the Public Utilities Commission of the District of Columbia.

purposes is abandoned if the railway discontinues operations and its railway track is removed.

In Hagerstown & Frederick Ry. v. Grove, 141 Md. 143, 118 A. 167 (1922), the Maryland Court of Appeals held that a railroad which had sought and received permission to change its right of way from one street to another and had removed the track from the former route had abandoned its easement over the former right of way. The court said:

In Vogler v. Geiss, 51 Md. 407, it is said: "It is now very well settled, by authorities of the highest character, that a party entitled to a right of way or other mere easement in the land of another may abandon and extinguish such right by acts *in pais*, and without deed or writing. . . . A cesser of the use, coupled with any act clearly indicative of an intention to abandon the right, would have the same effect as an express release of the easement, without any reference whatever to time."

. . .

The appellants in this case, it will be seen, had not only ceased to use the strip of ground in dispute for the purposes of a railroad, but it accepted from the city of Frederick the franchise for the operation of its railroad on Fifth street, under an ordinance which provided for the cessation and termination of the right to operate on Fourth street, and that it was to remove its track from Fourth street and put the street in as good condition as it was before the laying of the tracks thereon. It took up and removed the rails and cross-ties from Fourth street, and the eastern portion of the strip of ground, condemned, and constructed and operated its road over and out of Frederick City over Fifth street, which

route had been changed from Fourth street to Fifth street.

"The facts disclosed by the record in this case, we think, are sufficient to prove, not only an intention to abandon the land in controversy, but there was an actual and complete abandonment thereof by the appellants." 141 Md. at 146–147, 118 A. at p. 168.

This reasoning has been followed and reinforced in a continuing line of Maryland decisions. See Maryland & P. R.R. v. Mercantile-Safe Deposit & Trust Co., 224 Md. 34, 39–41, 166 A.2d 247, 95 A.L. R.2d 463 (1960); East Washington Ry. v. Brooke, 244 Md. 287, 293, 223 A.2d 599 (1965).

■ Here the defendant ceased rail operation in 1960 pursuant to the 1956 mandate from Congress and the orders of the two Public Utility Commissions which ordered the cessation of rail service (the Maryland order indicates the defendant desired to cease its rail service despite opposition from former users of the railway)[6] and has removed its standard "T" rail track and copper admittedly at a profit. At this time the defendant has no license to operate a rail system over this area or elsewhere.[7]

In light of these facts and the decisional law of Maryland as outlined, this court must conclude that any railway easements the defendant held in Maryland have been abandoned. The granting of gas and water line easements, resistance to trespassers, and payment of taxes do not persuade this court otherwise. The payment of taxes is not at all conclusory both under federal and state law, Oklahoma City-Ada-Atoka Ry. v. Ada, 182 F.2d 293, 296 (10th Cir. 1950); East Washington Ry. v. Brooke, 244 Md. 287, 223 A.2d 599 (1965). The Bingham report for construction of a monorail is at best a feasibility study and is totally speculative. It requires the use of ease-

6. *See* footnote 5, noting especially paragraph 4 of the Maryland Public Service Commission order and the conclusion that "the Commission has no alternative but to grant the application."

7. As mentioned all of the defendant's present licenses are for motor vehicle transportation.

ments not then or presently acquired and the certificates of necessity and convenience not then or presently acquired, in addition to the dubious political and economic practicality of the report.

Thus, the crux of this matter is whether the defendant held these lands in fee or by easement. If the defendant held a fee, both sides agree there is no abandonment; if the defendant had a mere easement then it has been abandoned and the title vests in third parties.

Title to parcel A–110 is governed by two deeds, the Talbott deed and the O'Neale deed. The O'Neale deed was executed in 1895 by the legatees of Timothy O'Neale and reads in operable part:[8]

> Give, grant, bargain and sell, alien, enfeoff, release and convey unto the party of the second part, its successors and assigns, forever the following described land and premises . . . containing 12,840 square feet, together with the rights to cut and fill in and upon said lands as may be required for the railway of the said party of the second part, together with all and singular the improvements, ways, easements, rights, privileges and appurtenances to the same belonging or in anywise appertaining, and all the estate, right, title and interest therein, either at law or in equity, or otherwise, of the parties of the first part, of, in, to or out of the said land and premises. To Have and To Hold the said land and premises and appurtenances, unto the only use of the party of the second part, íts successors and assigns forever.

The Talbott deed was given by William H. Talbott, trustee pursuant to an equity decree of the Montgomery County Circuit Court in 1921 and reads in operable part:

> I, the said William H. Talbott, trustee as aforesaid, do hereby grant and convey unto the plaintiff, The Washington Railway and Electric Company, a corporation duly incorporated, its successors and assigns, *a right of way* for its chartered purposes upon and over the strip of land in controversy in said case . . . . [emphasis supplied]

It is the government's contention that the O'Neale deed does not grant a fee but instead a mere easement because the deed conveys the additional right to "cut and fill in and upon said lands as may be required for the railway." The government contends this additional grant is repugnant to the grant of a fee because a fee by its nature gives all rights in the land to the feeholder. The government likewise urges that the Talbott deed by its clear language conveys no more than an easement. The defendant's position is that the operable language of the O'Neale deed intends to grant and grants a fee and the additional grant pertains to land outside the strip in question. Defendant contends that the Talbott deed which was granted by trustee pursuant to court order conveyed a fee because the underlying equity decree of the Montgomery Circuit Court required that a fee be given.

■■ As to both deeds the defendant urges the court to follow the intention of the parties as evidenced by all of the facts and circumstances. And indeed, the Maryland courts have so held that this court must look to both the deeds themselves and the conduct of the parties to determine whether an easement or a fee has been granted. E. g., Richfield Oil Corp. v. Chesapeake & Curtis Bay R. R., 179 Md. 560, 569, 20 A.2d 581 (1941); Green v. Eldridge, 230 Md. 441, 187 A.2d 674 (1963). However, here extrinsic evidence of the intention of the parties is virtually nonexistent. It is true that the devisees' heirs of the O'Neale's and Lee Hutchins

---

8. Although not strenuously urged, a 1961 deed from Penn is in evidence here. While the entire chain of title is not before the court, it is evident from the 1925 deed from the Penns to A. J. Watkins Realty Co. that the 1961 deed passed no interest to the defendant.

and/or purchasers from them have apparently permitted D. C. Transit to exercise indicia of ownership over this land, but that fact, especially in view of the long passage in time from these deeds to the cessation of rail service does not alone determine the legal title to these lands. In Maryland R.R. v. Mercantile-Safe Deposit Trust Co., *supra,* complete use of a right of way for eighty-some years without complaint from the true owners had no effect on the legal title to the land.

The deeds themselves are not completely unambiguous, but after examining them carefully this court holds that the O'Neale deed conveyed a fee simple title while the Talbott deed conveyed no more than an easement.

The plain meaning of the Talbott deed is to convey an easement. As stated in Richfield Oil Corp. v. Chesapeake & Curtis Bay R.R., quoting Elliott on "Railroads," Lewis on "Eminent Domain," and Jones on "Easements":

> "Where the intention to convey a fee does not appear as in the conveyance of a 'right of way' for the railroad through certain lands, the company takes an easement only" . . . "The conveyance of a right of way or for specified uses, conveys an easement only" . . . "Where the granting clause of a deed declared the purpose of the grant to be the right of way for a railroad, the deed passes an easement only." 179 Md. 572–573, 20 A.2d 588.

*See also* East Washington Ry. v. Brooke, 244 Md. at 294, 223 A.2d at 603 where a deed stating "[g]rantors do grant and convey a parcel of land . . . used for railroad purposes" was held to convey an easement; Desch v. Knox, 253 Md. 307, 311, 252 A.2d 815 (1969).

This court agrees with the government that a legal draftsman, not to mention a court decree, would not use such language to convey a fee title to a railroad. Moreover, the deed is in accordance with the court decree in that both speak in terms of "right of way"

for "chartered purposes." An objective reading of the court's opinion does not reveal to this court that a fee simple title was to be conveyed by Hutchins; nor was a fee simple grant mandatory. Since the equity court was concerned not with the *quantum* of the right of way, but whether Stilson Hutchins, a dominating force in the Washington and Great Falls Railway had conveyed a right of way to that company, it did not squarely meet the issue here, but this court notes that the railway did not complain of the court's language, and, to the contrary, accepted the deed tendered by William H. Talbott, trustee. The court and the parties presumably were well aware of the language used in the decree and the deed as well as its legal effect. The correspondence between Stilson Hutchins and the company's secretary, quoting from the court opinion, states "that the company could find no deed for a right of way through his [Hutchins'] property" (an unexecuted carbon of a deed purportedly sent to the company granting a right of way subject to numerous restrictions was excluded by the court). While a railroad may have the power to take in fee, it need not necessarily do so, and in fact railroads customarily hold their right of way by easement. And while the term "right of way" may be used in either fee or easement context, as a general rule only an easement is meant. *See* Richfield Oil Corp. v. Chesapeake and Curtis Bay R.R. Co., 179 Md. at 574, 20 A.2d 581. The court cannot help but equate the term "for its chartered purposes" with the term "for railroad purposes." *See* East Washington Ry. v. Brooke, 244 Md. at 294, 223 A.2d 599. These factors all reinforce the plain language of the Talbott deed granting an easement.

The O'Neale deed is more difficult to construe. This deed reads "give, grant, bargain and sell, alien, enfeoff, release and convey . . . forever . . . . ."

Yet it unquestionably grants additional rights on the land—rights which are

completely unnecessary if a fee has been granted and which are indeed repugnant to a claim of fee. While aware of the decision of the Court of Appeals of Maryland in Hodges v. Owings, 178 Md. 300, 305, 13 A.2d 338 (1940), the court has decided to construe this deed favorably to the defendant. In *Hodges*, construing a deed of similar construction, the court said:

"We think it plain that the conveyance was of an easement for railway purposes and use only." 178 Md. at 305, 13 A.2d at 340. Several factors join to make this court distinguish the *Hodges* decision. There a gift was made of the land rather than a sale. And the deed, which is in more general language than the deed in issue here, is definitely linked to the use of the land as a railroad. The deed here both in the granting and the habendum clause conveys an estate "forever" and "all the estate, right, title and interest either at law or in equity or otherwise of the parties of the first." While the use of the term "forever" is by no means conclusive here, *cf. State Roads Commission v. Johnson*, 222 Md. 493, 497–498, 161 A. 444 (1959), and cognizant of the additional grant in this deed, the court examining the deed as a whole and in light of the defendant's exercise of ownership over the property finds that the deed conveyed fee simple title.

 Having decided that the defendant held a mere easement to the Hutchins' land, an easement which has been abandoned by the revoking of its railway license pursuant to Congressional mandate, the discontinuance of rail service and the removal of its tracks and copper, but that the O'Neale property is held by the defendant in fee, the court must consider the contention of D. C. Transit that it has the right to perfect title to any breaks in its right of way including these two tracts by virtue of its eminent domain power. The government under the authority of *United States ex rel. T.V.A. v. Powelson*, 319 U.S. 266, 280–285, 63 S.Ct. 1047 87 L.Ed. 1390 (1945) vigorously opposes this contention. The court agrees with the gov-

ernment that a major break in the right of way is uncurable and would foreclose defendant from proposing a highest and best use of a high speed rail corridor as to any tract along the would-be corridor.

The O'Neale deed is held to have conveyed a fee, while the Talbott deed conveyed an easement which stands abandoned. Thus parcel A–110 in and of itself demonstrates a breach in the utility-corridor theory advanced by the defendant. Therefore, the issue of title having been determined, evaluation must proceed on the highest and best use available to similar parcels with no consideration given to the parcel of land here under consideration as a part of a continuous utility corridor.

Counsel will submit an appropriate order.