265 Md. 622 (1972)
290 A.2d 807
D.C. TRANSIT SYSTEM, INC.
v.
STATE ROADS COMMISSION OF MARYLAND ET AL.
[No. 330, September Term, 1971.]
Court of Appeals of Maryland.
Decided May 18, 1972.
Motion for rehearing filed June 19, 1972.
Denied June 29, 1972.
The cause was argued before HAMMOND, C.J., and BARNES, McWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.
*623 Rex L. Sturm, with whom were R. Edwin Brown and Manuel J. Davis on the brief, for appellant.
Earl I. Rosenthal, Special Attorney, with whom were Francis B. Burch, Attorney General, Nolan H. Rogers, Special Assistant Attorney General, and Herbert W. Reichelt on the brief, for State Roads Commission, part of appellees. John M. Middleton on the brief, for George A. Dorr, et al., other appellees.
McWILLIAMS, J., delivered the opinion of the Court.
In D.C. Transit System, Inc. v. State Roads Comm'n, 259 Md. 675 (1970), we held that the interest of D.C. Transit System, Inc. (DCT) in seven properties in Prince George's County at no time rose higher than an easement for railroad purposes, but we thought the evidence was a little too thin to support the chancellor's finding of abandonment. We remanded the case for further proceedings. The chancellor, Loveless, J., again concluded the easement had been abandoned. From his order of 8 September 1971 DCT once more has appealed.
Although the facts and circumstances were stated rather fully in D.C. Transit, supra, some repetition will be necessary here. Judge Smith, for the Court, pointed out that essentially the same language was used
"* * * in each of the seven deeds to Columbia and Maryland Railway, a predecessor of the Transit Company. Typical is the instrument executed by George A. Dorr and wife on June 4, 1896. It reads in pertinent part as follows:
"`That in consideration of the sum of One Dollar, the said party of the first part do  grant and convey unto the party of the second part, its successors and assigns all the piece or parcel of land situate, lying and being in Prince George's County, State of Maryland, and particularly described on a plat made by the party of the second part *624 or its agents (the same being a plat of the Rights of way of the said Columbia and Maryland Railway and to be recorded among the Land Records of Prince George's County) as follows, to wit: * * * [metes and bounds, courses and distances].
"`To have and hold the same unto and to the use of the Columbia and Maryland Railway its successors and assigns for a right of way and such other purposes as said Railway Company is authorized under its act of incorporation, the Act of 1892, chapter 383, the Act of 1894 chapter 274, and the General Incorporation Law of this State to acquire, dispose of or deal in real estate.' (Emphasis added.)" Id. at 679-80.
In 1956 the Congress gave DCT a franchise to substitute buses for trolleys, to discontinue the trolley service and to remove the tracks, all to be accomplished within seven years. DCT also applied to the Public Service Commission of Maryland for permits to operate buses in Maryland. The permits were issued in August 1958. Notices were posted in the trolleys telling patrons that on 7 September 1958 the trolleys would be replaced by buses. Since then most of the ties and rails have been removed and much of the overhead electrical gear has been dismantled and taken away.
As related by Judge Loveless in his (second) opinion:
"The Transit Company contends that it has not abandoned the land. It sets forth the position that its corporate intent has been and continues to be that of planning to use the land for a monorail system and alternatively for a high speed bus line. Various officers of the Transit Company testified that a monorail system has been under study since at least 1957. To corroborate this testimony, the Transit Company introduced into evidence various documents in *625 the form of reports and letters bearing on the research, development, and cost of a monorail system. As to the bus line possibility, there was testimony that actual bus timetables had been prepared showing planned scheduled stops along the proposed route. The Transit Company states that the land is of sufficient width to sustain the construction and operation of a monorail system, and would be equally sufficient for high speed bus line use.
"To further support its contention that it has not abandoned the easements, the Transit Company alleges that the utility poles from which were suspended the electric wires that supplied current to the streetcars are still standing, and that the poles are carried on the books and records of the Transit Company as an asset. Also advanced was the contention that the `bed' of the streetcar line remains essentially visible and obvious, and that the line was occasionally walked by maintenance men of the Transit Company.
"As to the rails of the streetcar line, the Transit Company alleges that while it did remove some of the rails and sell them for salvage, other rails were paved over by the State Roads Commission (the Commission) during road resurfacing operations."
The only question presented here, of course, is whether DCT has abandoned the easements. Relying on Canton Co. v. Baltimore & Ohio R. Co., 99 Md. 202 (1904), it argues that nonuser is insufficient to establish abandonment unless an intention to abandon can be shown. While we agree this is a correct statement of the law, we think Canton is factually distinguishable from the case at bar.
It is generally conceded that the abandonment of a right of way is to a large extent a matter of intent; rarely, however, is intent proved directly. See, e.g., Maryland *626 & Pa. R. Co. v. Mercantile-Safe Deposit & Trust Co., 224 Md. 34, 40 (1960); 44 Am. Jur. Railroads § 108 (1942). Of course, statements of company officials indicating an intention to abandon or no longer to use a right of way have been afforded considerable weight in finding an abandonment. People v. Ocean Shore R., Inc., 32 Cal.2d 406, 196 P.2d 570 (1948); Westcott v. New York & N.E.R. Co., 152 Mass. 465, 25 N.E. 840 (1890). Ordinarily, however, statements disclaiming an intent to abandon, while of some value, are too weak and too insufficient to bar a contrary finding where there is other evidence. Ocean Shore R. Co. v. Doelger, 179 Cal. App.2d 222, 3 Cal. Rptr. 706 (1960); see Canton, supra. The rule has evolved, therefore, that to produce the abandonment of an easement there must be action in respect of its use which indicates an intention never to make use of it again. 2 American Law of Property § 8.97 (A.J. Casner ed. 1952). This rule, in varying forms, has been applied in most jurisdictions. See, e.g., Maryland & Pa. R. Co., supra; Hagerstown & Frederick R. Co. v. Grove, 141 Md. 143 (1922); Smith v. Harris, 181 Kan. 237, 311 P.2d 325 (1957); Sindler v. Wm. M. Bailey Co., 348 Mass. 589, 204 N.E.2d 717 (1965); United Parking Stations, Inc. v. Calvary Temple, 257 Minn. 273, 101 N.W.2d 208 (1960); Freedman v. Lieberman, 2 N.J. Super. 537, 64 A.2d 904 (1949); Spaeder v. Tabak, 170 Pa. Super. 392, 85 A.2d 654 (1952); Spangler v. Schaus, 264 A.2d 161 (R.I. 1970).
In Vogler v. Geiss, 51 Md. 407, 410 (1879), Judge Alvey (later Chief Judge) said, for the Court:
"It is now very well settled, by authorities of the highest character, that a party entitled to a right of way or other mere easement in the land of another may abondon and extinguish such right by acts in pais, and without deed or other writing. The act or acts relied on, however, to effect such result, must be of a decisive character; and while a mere declaration of an *627 intention to abandon will not alone be sufficient, the question, whether the act of the party entitled to the easement amounts to an abandonment or not, depends upon the intention with which it was done, and that is a subject for the consideration of the jury. A cesser of the use, coupled with any act clearly indicative of an intention to abandon the right, would have the same effect as an express release of the easement, without any reference whatever to time. Glenn v. Davis, 35 Md. 208, 217; Reg. v. Chorley, 12 Ad. & El. N.S. 515; Moore v. Rawson, 3 B. & Cr. 332; Liggins v. Inge, 7 Bing. 682; Pope v. Devereux, 5 Gray, 409."
The rule of Vogler has been approved and followed. East Washington R. Co. v. Brooke, 244 Md. 287 (1966); United States v. 1.44 Acres of Land, 304 F. Supp. 1063 (D. Md. 1969).
Circumstances sufficient to establish an intent to abandon must be decided on a case-to-case basis. It is clear, however, that mere nonuser, unless for a considerable period, is insufficient to show such intent. Shuggars v. Brake, 248 Md. 38, 46 (1967); Maryland & Pa. R. Co., supra; Canton, supra. If there is evidence of something more than mere nonuser, the question of abandonment is for the trier of fact, Maryland & Pa. R. Co., supra; Volger v. Geiss, supra, and in a nonjury case such as the one at bar, the judgment of the lower court will not be set aside on the evidence unless clearly erroneous. Maryland Rule 886.
Since counsel told us at argument that DCT relies on Canton, and that it can be distinguished from Maryland & Pa. R. Co., we shall discuss these two cases in some detail. In Canton ejectment was brought to recover the possession of land an easement over which had been condemned by the railroad in 1885. Although the railroad had entered into possession of the property, it made little use of it beyond the emplacement of trackage. The *628 tracks were never connected with the railroad's other tracks, and in 1898 they were removed without having been used to any great extent. Instead, the railroad had used an alternate route; i.e., the Howard Street tunnel.
During the course of the trial a railroad official testified there never had been any intention of abandoning the project, that it would have been "a very unwise thing to do," and that as soon as the railroad's network became overworked, traffic would have to pass over the subject property "or some line substituted for it." In affirming a finding of no abandonment, our predecessors said:
"So a change of route is strong evidence of an abandonment of the old way, and in some cases has been held, under the then existing circumstances, to amount to an abandonment. [Citing cases.]
"If the new route be attended by circumstances showing that the change is but temporary, or that it is not in fact intended for an abandonment of the old route, but to secure additional accommodation for its business, or there are other acts showing a want of intention to abandon, there is no good reason why as matter of law it should be so regarded. [Citing cases.]" 99 Md. at 218-19.
In Maryland & Pa. R. Co. v. Mercantile-Safe Dep. & Trust Co., supra, the railroad not only had removed its tracks from the right of way; it had discontinued its operations. Judge Horney wrote for the Court:
"In the Canton case, where the easement had been acquired by the railroad company in a condemnation proceeding for a considerable sum of money, where ties and rails had been laid and subsequently removed after the railroad had contracted to use the route and facilities of an adjacent railroad, and where there was positive evidence that the railroad had no intention of *629 abandoning the easement, this Court held that mere nonuser of the easement or the adoption of another route did not necessarily constitute abandonment. But that case is clearly distinguishable from the instant case in at least one important aspect. In the Canton case, even though the railroad also had removed the ties and rails from the right of way, an official of the railroad had positively testified that the railroad had no intention of abandoning the easement, while in the case at bar, as we read the record, there was no evidence disclaiming an intent to abandon the right of way.
"While it is true that the burden of proving abandonment rests on the one who asserts or relies on it (Klein v. Dove, 205 Md. 285, 295, 107 A.2d 82 [1954], citing Sachs & Sons v. Ward, 182 Md. 385, 35 A.2d 161 [1943]), the law is well settled that the intent to abandon may be shown by the acts of a party indicating such an intention. Glenn v. Davis, 35 Md. 208 (1872). Therefore, since the uncontroverted evidence in the present case was to the effect that the defendant had ceased to operate as a railroad in 1958 and had removed its rails and ties from the right of way, and since time is not an element in abandonment if it is shown that use of the easement has ceased and there has been some act clearly indicative of an intention to abandon the right of further use (Canton Co. v. Baltimore & O.R.R. Co., supra), it was proper for the trial court to conclude, as it did, that there had been abandonment." (Emphasis added.) 224 Md. at 39-40.
As we read Canton the testimony disclaiming an intent to abandon the easement was not the sole ground upon which the Court based its conclusion, although there is no doubt it was considered. As has been said, testimony *630 disclaiming an intent to abandon is relevant, even though it is generally considered weak proof. We are not persuaded that Maryland & Pa. R. Co. should be construed as putting the significance of such testimony any higher. This is not to say, however, that the two cases may not be distinguished on the ground there was no self-serving testimony of this nature in Maryland & Pa. R. Co.; there were other reasons as well. As we see it, the decisive factor in Maryland & Pa. R. Co. was the fact that the railroad had ceased all operations and had subsequently removed its tracks. We rather doubt that direct testimony disclaiming an intent to abandon would have placed the railroad in any better position.
In the case at bar Judge Loveless was not impressed by the testimony dealing with notions of a monorail or high speed bus line. He thought the potentialities of these uses were too speculative to preclude a finding of abandonment. We are inclined to agree. As he put it:
"In light of the testimony, evidence, and arguments adduced in open court, and considering the actual cessation of streetcar operations and the removal of rail from the lines, this court finds that the Transit Company has abandoned its easements of the land in dispute, notwithstanding the alleged intent to pursue the research and development of a monorail system and/or a high speed bus line."
We cannot say that his finding is clearly erroneous. Rule 886.
Order affirmed.
Costs to be paid by the appellant.